*Water company — what gives it an exclusive right in a town — eminent domain — when the report of the commissioners will be upheld — appraisal of lands at a less sum than a mortgage thereon.*

The Long Island Water Supply Company was organized in 1881, under chapter 737 of the Laws of 1873 and the amendments thereto, to furnish water to the town of New Lots, which was then adjacent to the city of Brooklyn.  By chapter 335 of the Laws of 1886 the Legislature annexed that town to the city of Brooklyn, and in the annexation act provided that the city of Brooklyn should not distribute or furnish water for consumption or use within the territory of the annexed town, or lay any pipes or mains for the distribution or supply of water therein, until the expiration of the charter of the company, or until the city should purchase the property rights of the company.  The charter of the company provided for its existence for the term of fifty years from August 17, 1881.

By chapter 481 of the Laws of 1892 the city of Brooklyn was permitted to acquire title by condemnation to all the property of the Long Island Water Supply Company.  Commissioners were appointed in conformity with the provisions of the act to ascertain the compensation to be made therefor, and an appraisal was made by the commissioners, which was not based upon the exclusive right of the water company to furnish water to the territory within the old town of New Lots.

*Held,* that the basis adopted by the commissioners in their appraisal was not erroneous, as chapter 737 of the Laws of 1873 did not give to the Long Island Water Supply Company the exclusive right to furnish water to the territory included in the limits of the former town of New Lots, nor the exclusive right to maintain water pipes and hydrants in such territory.

Where witnesses are not harmonious in their views the report of commissioners of appraisal will be upheld, unless it is so clearly against the weight of the body of the evidence as to justify a reversal for that reason.

A water company has no exclusive right, by force of the permission of a town authorizing it to lay and maintain water pipes and hydrants and to supply the town and its inhabitants with water; nor does a contract made between such town and such company, whereby the company agrees to furnish the town with water and to lay and maintain pipes and hydrants therein, but which does not require a distribution of water to all the inhabitants of the town, and calls for only fifteen miles of pipe, where there were over 100 miles of street in the town, give such right.

It is not obligatory upon a commission appointed to appraise lands taken for a public use that an award shall be made greater than the mortgage on the property appraised ; the value only is to be assessed, and the money will go where justice requires it to go and no further.

APPEAL by the City of Brooklyn from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 29th day of June, 1893, denying a motion to confirm the report of commissioners of appraisal; reversing, setting aside and vacating their report and appraisal; appointing new commissioners and fixing the time and place for their first meeting.

On the 1st day of August, 1881, the supervisor, town clerk, justices and highway commissioners of the town of New Lots passed a resolution authorizing certain persons, and their successors, by and through a corporation to be formed by them (viz., the Long Island Water Supply Company), " to supply this town and the inhabitants thereof with pure and wholesome water, and also authorize them and their successors, by and through such corporation, to lay and maintain their pipes and hydrants for delivering and distributing water in any of the streets, highways or public places of said town, upon the condition and obligation that such pipes shall be laid and placed below the surface of such streets, highways or places, and that wherever any street, highway or public place shall be disturbed or broken in laying or maintaining such pipes, such corporation shall restore the same to as good a condition as the same was in before."

The following is the contract entered into between the town of New Lots and the Long Island Water Supply Company:

" Articles of Agreement made and entered into this fifteenth day of September, A. D., 1881, by and between the town of New Lots (by C. Washington Colyer, the supervisor; Emil Schiellein, Charles Gertune, James H. Spencer and William Sherlock, the Justices of the Peace; Louis Biedermann, the Town Clerk; Philip L. Jardin, Henry H. Adams and Stephen G. Conover, the Commissioners of Highways of said town, the said persons being the Board authorized and empowered by Chapter 737 of the Laws of 1873 and the laws amendatory thereof and supplementary thereto), party of the first part, and the Long Island Water Supply Company (a corporation duly authorized and empowered under said laws), party of the second part, witnesseth as follows:

" Whereas, the party of the first part has duly authorized the party of the second part to lay pipes and mains in the streets, avenues and highways in said town for the purpose of supplying water to said town and the inhabitants thereof, and

" Whereas, the said party of the second part has represented that it is now about to proceed to the construction of the work necessary to procure a supply of water as aforesaid, and

" Whereas, the said town is desirous, under the authority conferred by said laws, of procuring a proper supply of water to be delivered through hydrants upon its streets, avenues and highways, and is desirous that said company shall immediately proceed with the work under the consent given as aforesaid,

" Now, therefore, it is mutually agreed as follows :

" The party of the second part agrees with said party of the first part to lay pipes and mains in the streets, avenues and highways of said town wherever there are a sufficient number of residents to make a supply of water from those sources necessary or convenient, but nothing in this contract contained shall compel the party of the second part to lay pipes or mains through highways where the adjacent property is occupied wholly or principally for farming purposes, or to lay or keep supplied such pipes or mains through more than fifteen miles of such streets, avenues or highways in said town.

" The party of the first part, by an instrument in writing executed by the persons hereinbefore named, as representing the said party of the first part, or their successors, may at such time or times as they may elect, designate streets, avenues and highways or. parts thereof in said town, in which it prefers pipes or mains shall be laid and supplied, and thereupon the party of the second part shall, within a reasonable time, lay pipes or mains on the streets, avenues and highways so designated, and continue from time to time to lay and maintain pipes or mains on the streets, avenues and highways therefor from time to time designated as aforesaid, until pipes or mains shall have been laid in the streets, avenues and highways as hereinbefore provided ; but nothing herein contained shall prevent the party of the second part from proceeding to lay pipes and mains or from erecting fire hydrants to the number of two hundred in the event of the party of the first part failing to designate therefor as herein provided. From the pipes or mains so laid water shall be supplied to all persons living on .the line of the streets, avenues or highways where the same are laid at prices not greater than those now charged in the city of Brooklyn ; but the said party of the second part shall have the right of reserving to itself the sole and exclu-

sive privilege of tapping or making incisions into the pipes and mains by it laid, and charging and collecting a reasonable compensation therefor from all persons desiring to have their property connected with such pipes or mains, and as a condition for such connection being made.

" The party of the second part shall also erect in the streets, avenues and highways of said town, at its own expense, hydrants of the kind or construction ordinarily known as fire hydrants, and keep the same in repair and furnish the party of the first part, or the fire department of the town of New Lots, proper appliances for opening the same.

" The party of the second part shall keep the said pipes and mains and said hydrants supplied with water, so as to have at all times a sufficient pressure, and shall at all times keep such pipes and mains supplied with pure and wholesome water sufficient to provide the citizens using the same, as hereinbefore provided, with a sufficient amount of water, and also provide a sufficient supply so that water may be drawn from said hydrants as may be necessary for the extinguishment of fires, or for sanitary or other purposes, except when prevented by the elements, or by causes against which, with reasonable precaution and forethought, they could not provide.

" And the said party of the second part also agrees to furnish all necessary drinking hydrants and keep the same supplied; such hydrants shall be for the use of men and animals as shall be required by said persons representing the party of the first part and their successors in office ; such hydrants and fire hydrants to be located upon such streets, avenues and highways in said town and at such points and distances thereon as said persons representing the party of the first part, or their successors, shall require, but not more than fifteen of such drinking hydrants shall be provided during the first year water is being supplied, nor more than twenty-five such drinking hydrants in all.   The number of fire hydrants to be furnished and supplied as herein provided shall not be less than two hundred ; compensation as provided herein for such fire hydrants and each of them shall commence to be earned at the time that such company shall commence to furnish and supply water thereto.   And the party of the second part shall furnish such further or additional number of fire hydrants as may be called for by said persons repre-

senting said party of the first part by a certificate in writing over their signature, or the signatures of a majority of them, made at a meeting duly called. For said fire hydrants so to be erected and supplied the said town shall and will pay the said company, in equal quarter-yearly payments, the sums following : For each of the first one hundred hydrants so to be erected the,sum of one hundred dollars per annum ; for each of the next fifty hydrants the sum of seventy-five dollars per annum, and for all fire hydrants beyond one hundred and fifty in number the sum of thirty-five dollars per annum ; but all drinking hydrants shall be furnished and supplied with water free of charge.

" The party of the second part also agrees immediately to proceed with all dispatch to erect its works for procuring such supply of water and giving the requisite pressure thereto, and to lay pipes and erect and supply hydrants in the streets and highways within the limits of said town, and to have the same in full working order without any unnecessary delay and as designation therefor may be made as hereinbefore provided.

" It is hereby further agreed between the parties hereto that said party of the second part shall furnish to said party of the first part for the use of its town buildings and engine houses, and also to its school houses, when situated in locations where pipes or mains are laid, a sufficient and proper supply of water free of charge, and whenever the receipts of said company from private consumers shall be sufficient to pay its legitimate expenses and seven per cent per annum upon its capital stock and six per cent per annum upon its bonded indebtedness, then and from thenceforth all rental for hydrants as herein agreed shall cease and determine, and the said party of the first part shall have the use of the same free from all charge whatever, and the said party of the second part shall continue and maintain the same at their own cost and expense.

" The books of said party of the second part shall be subject to the inspection of said party of the first part at all reasonable times for the purposes of enabling it to ascertain the time when the rental for said hydrants shall cease.

" Said party of the second part further agrees to repair and restore to its original condition all the streets, avenues and highways which it may have cause to disturb in the laying of its pipes and mains.

" All pipes and mains and hydrants to be laid and furnished shall be of sufficient capacity to supply all necessary water for the uses and purposes herein contracted for.

" This contract may be altered or amended by the consent of the parties hereto, given in writing and executed by the proper authorities or officers of the respective parties.

" The terms, covenants and conditions of this contract shall bind the parties hereto and their successors and assigns, and shall continue in full force and effect for the full term of twenty-five years from the date hereof.

" In witness whereof, the said town, party of the first part, has caused these presents for it and on its behalf to be executed by Emil Schiellein, James H. Spencer, William Sherlock, Justices of the Peace of said Town, and Philip L. Jardin, Henry H. Adams and Stephen G. Connover, Commissioners of Highways of said Town, by their hands and seals thereto set; and the said Company, party of the second part, has also executed the same by causing its corporate seal to be affixed thereto, and these presents to be signed by its President and Secretary, this 15th day of September, A. D. 1881.

" EMIL SCHIELLEIN,                 [L. S.]
" JAMES H. SPENCER,               [L. S.]
" WM. SHERLOCK,                   [L. S.]
          " *Justices of the Peace.*
" PH. L. JARDIN,                  [L. S.]
" HENRY H. ADAMS,                 [L. S.]
" STEPHEN G. CONNOVER,    [L. S.]
          " *Commissioners of Highways.*
" GEORGE H. HENRY,
          "*Pres. Long Island Water Supply Co.*
" WM. DINSMORE, *Secy.*          [L. S.]

" Sealed and delivered in ⎱
          presence of     ⎰
                " CHAS. Y. VAN DOREN."

*Almet F. Jenks, Corporation Counsel, George G. Reynolds* and *Albert G. McDonald*, for the city of Brooklyn, appellant.

*William C. De Witt* and *Thomas E. Pearsall*, for the Long Island Water Supply Company, respondent.

BARNARD, P. J.:

The Legislature, by chapter 737, Laws of 1873, and amendments thereto, authorized by a general act the formation of water companies in towns and villages within the State. Under these laws the Long Island Water Supply Company was organized in 1881 to furnish water to the town of New Lots, which was then adjacent to the city of Brooklyn, but was not a part of it. By chapter 335, Laws of 1886, the Legislature annexed the town to the city of Brooklyn, and in the annexation act provided that the city of Brooklyn should not distribute or furnish water for consumption or use within the territory of the annexed town, or lay any pipes or mains for the distribution or supply of water therein until the expiration of the charter of the water company, or until the city should purchase the property rights of the water company. The charter was taken for the term of fifty years from the 17th of August, 1881. By chapter 481, Laws of 1892, the city of Brooklyn was permitted by law to acquire a title by condemnation to all the property of the Long Island Water Supply Company, consisting of the reservoir, machinery, water pipes and franchises, for the public use. The act provided that commissioners should be appointed to ascertain the just compensation to be made therefor. The commissioners, appointed in the manner provided for by the act, have heard the testimony of the parties, and have made their report. This report was set aside by the Special Term, and this appeal presents the question whether or not the award gives just compensation for the property taken for the public use. The subject of the appraisal is an unusual one, and the proof is very conflicting as to value. The case is one which easily falls within the settled principle that where the witnesses are not harmonious in their views the report of the commissioners will be upheld unless it is so clearly against the weight of the body of the evidence as to justify a reversal for that reason. This award must be affirmed unless an erroneous basis was adopted by the commissioners in their appraisal. The commissioners have made a statement of the rule which governed them, and the important question is whether or not this rule was one which should have been followed. The commissioners state that their appraisal was not based upon the exclusive right of the water works company to fur-

nish water to the territory within the old town of New Lots. This was a correct view. The act, chapter 737 of 1873, gives no such exclusive right to a corporation formed under its provisions. The town made a contract with the water company, but this contract did not even require a distribution of water to all of the inhabitants of the town. There are over 100 miles of streets, and the contract calls for only fifteen miles of pipes. The fact is not very material, but it will become important when the effect of the legislative restriction in the annexation act is considered. The water company had no exclusive right in the town by force of the town permission and the contract. (*Syracuse Water Company* v. *City of Syracuse*, 116 N. Y. 167.)

The restriction in the annexation act gave no additional power to the water company. It does not purport to do so. The restriction is to be considered with respect to the facts which existed when it was inserted. The town water company existed and had made expenditures under its charter. The restriction was designed only to protect the water company from injurious competition until the city made it a just compensation for its property. The water company seeks to use this humane provision to confer an absolute right to supply the district of New Lots with water for the entire period of the chartered life of the company and to have this exclusive right assessed as part of the franchise of the company. The commissioners of appraisal took the proper view of the restriction. It conferred no additional right and it could, at any time, be repealed, and no error of principle can be based upon an expectation that a repeal of the restriction would be made, if its effect was to greatly increase the value of the franchise of the water company as it existed at the date of annexation. The water company was not bound to supply the district annexed and the city was forbidden to do so for a very long term of years. The Legislature intended no such result and the restriction is not to be so read. The city competition with the water company is stayed until it gets title to the water company property such as it was before the annexation act was passed. This is the construction of the Court of Appeals in *Ziegler* v. *Chapin* (126 N. Y. 342) on the effect of restriction. The case does not hold that the value of the franchise was increased thereby and must be paid for by the city. The case of *The People* v. *O'Brien* (111 N.

Y. 1) holds no such doctrine. The right of the water company cannot be taken away, but what the right was which was to be paid for was not determined by that case and no such question was in it. It is not obligatory upon a commission appointed to appraise lands taken for public use that an award shall be made greater than the mortgage on the property. The value only is to be assessed, and the money will go where justice requires it to go and no further. Otherwise an excessive mortgage would prevent condemnation for public use. The evidence as to value is very full, and even if under strict rules of evidence something was improperly admitted or rejected it did not affect the result.

The order refusing a confirmation of the report of the commissioners should be reversed, with costs and disbursements, and the motion to confirm granted, without costs of that motion.

DYKMAN and CULLEN, JJ., concurred.

Order setting aside award of commissioners and appointing new commission for a reappraisement reversed, with costs and disbursements, and report of commissioners confirmed.