In the Matter of Acquiring Title by the CITY OF NEW YORK, Respondent, to Certain Lands and Premises Situated North of West 187th Street from Fort Washington Avenue to Northern Avenue, in the Borough of Manhattan, in the City of New York, as a Site for School Purposes According to Law.

ESAM HOLDING CORPORATION and Others, Appellants.

First Department, February 3, 1928.

Eminent domain — acquisition of land for school house site in city of New York — award — property appropriated is above street level and covered with rock — insufficiency of award not ground for appeal — condition of property and location taken into account in determining amount of award — award will not be reversed because it is less than sale price or less than mortgage.

An award was made to the claimant for property appropriated by the city of New York for a site for a school house, and the claimant contends that the award is insufficient.

Mere insufficiency of an award is not ground for an appeal, for the court will not interfere with the determination of the Special Term unless injustice has been done or an erroneous theory has been adopted in making the award.

The property in question is located in a comparatively inaccessible place, is above street level and is partly covered with rock. In making the award, the court properly considered the location of the property, its inaccessibility and its physical condition, which, under the circumstances, detracted materially from its value. In determining the value of the property it was proper to compare the sale of property similarly situated and in the same neighborhood.

The contention by the claimant that the award is much less than the purchase price of the property and less than the purchase-money mortgage, is of little weight, since it appears that the property came into the possession of the claimant through a dummy corporation, which it controlled, and only after it was known that the city was to take over the property as a site for a public school. Furthermore, the mere fact that the award is less than the purchase price, or even less than the mortgage on the property, is not evidence that the award made is not adequate.

Furthermore, the fact that the award is less than the value given by experts for either the city or the claimant, does not call for a reversal, for such testimony is advisory only, and, if unreliable, may be entirely disregarded.

McAVOY and O'MALLEY, JJ., dissent, with opinion.

APPEAL by Esam Holding Corporation and others from a final decree of the Supreme Court, entered in the office of the clerk of the county of New York on the 11th day of May, 1926.

*Frank C. Laughlin* of counsel [*Joseph W. Kirkpatrick* and *Isaac E. Bermant* with him on the brief; *Skinner & Bermant*, attorneys], for the appellant Esam Holding Corporation.

*Francis P. O'Connor* of counsel [*James Garfield Moses* with him on the brief; *Edward W. Murphy*, attorney], for the appellants Louise Loth Sicher, Fanny L. Sicher, Regina Sicher and Dudley F. Sicher.

*Henry W. Mayo* of counsel [*George P. Nicholson, Corporation Counsel*], for the respondent.

MARTIN, J. The city of New York instituted a proceeding to acquire title to a plot of land to be used as a school site. In that proceeding an award was made to the owner of what is known as parcel No. 2. Dissatisfied with that award it has appealed therefrom. An appeal has also been filed by the mortgagees.

The owner of parcel No. 1, which is a part of the same plot and similar in nearly all respects, has accepted the award made for that property. No appeal therefrom has been taken.

The claimant contends that the amount fixed by the court is not adequate compensation for the property taken; that it is not only less than the purchase price paid for the property by the owner but less than the purchase-money mortgage given to the seller when the title was transferred.

Insufficiency of an award alone is not a ground for an appeal. This court will not interfere with the determination of the Special

Term unless injustice has been done, or an erroneous theory has been adopted in reaching the result.

In *Matter of Brook Avenue* (8 App. Div. 294, 295) the court said: " Conspicuous among these objections is one relating to the alleged insufficiency of the compensation awarded to each of the objectors for the damage sustained by them in consequence of the improvement; but we do not find that there is anything to impair the fairness or the honesty of the award made in this record, and it has been so frequently determined that the question of amount of compensation is so clearly within the conclusive control of the commissioners, and that the court will not interfere with their honest judgment upon that subject, that it is somewhat surprising that the question is constantly brought up, notwithstanding the fact that it has been so long and so thoroughly settled."

The property in question when taken was in a very inaccessible locality, compared with other sections of the city and was surrounded by a great amount of undeveloped property, much of which was for sale. In addition it was partly covered with rock above grade which it is admitted rendered it less valuable than surrounding property at grade.

The two parcels Nos. 1 and 2 were assessed at $136,000 and the court allowed $70,943.40 for parcel No. 1 and $81,757.40 for parcel No. 2, or $152,700.80 for both parcels, about $16,000 over the assessed valuation. The witnesses for claimant placed a value of $169,978.69 on parcel No. 2 which valuation is not justified by any facts testified to or found in the record and could not have been believed by the witnesses, if they were familiar with values in the neighborhood.

On February 6, 1924, Jacob H. Mayers, employed as an appraiser for the owners, made an affidavit dated that day setting forth the value of this property. On the argument of this appeal it was agreed that this appraisal might be considered by the court. In his sworn statement he appraised the property at $73,000, its assessed valuation, as of the date of the death of the owner. It is argued that was a value given as of June 23, 1921, but the affidavit made a short time before the city took title to the property contains a significant statement, in which it is said: "All the above vacant property is in a very hilly section and a great deal of it has steep inclines and is covered with a great deal of rock. There have been no sales made in this section for a great many years, and this property I might say is almost unsalable, therefore I have taken the City's values on all of this property. The only way of reaching this property is through 181st Street, which is the nearest cross-street open to this property."

This affidavit of the appraiser gives a very striking idea of the

property and the surrounding conditions, which affidavit, made at a time when it was not known that the city was about to take the property for a school site, fully supports the testimony of the experts for the city.

The witnesses for the city testified that the property was inaccessible; that there were no sewers in certain abutting streets; that a large amount of rock covered a portion of the property, which rock is shown by the photographs attached to the record; that it was then restricted to residences or apartments and that there was an additional restriction as to the height of apartment houses.

The witnesses for the claimant, although admitting some of the conditions which detracted from the value of the property, nevertheless gave as their opinions values greater than those to be found in well-developed sections of the city and situated more favorably as to location, transit facilities and accessibility and with all modern improvements such as paved streets and sewers.

Despite the argument of the appellant and the wholly unreliable figures of some of the experts, so called, the market value of this property may be arrived at by a comparison of the sales of property similarly situated and in the same neighborhood.

We will not repeat verbatim the testimony with reference to sales. To do so would unduly prolong this opinion. When summarized it shows that lots in the neighborhood, much more favorably situated than the property in question, were sold for prices ranging from $3,000 to $7,000. The average price per lot allowed here is about $5,000. The city contended that sales were made of similar but somewhat more desirable property for $3,500 a lot.

It is urged as a ground for reversal that the experts for the city used an erroneous theory in arriving at the value of the property. They gave as their opinion that the rock on these lots made them less valuable than lots at grade, and that in fixing the value they took that fact into consideration. They testified to what is common knowledge, that lots covered wholly or partly with a substantial amount of rock are not as valuable as those without rock above the street grade. A witness for the city testified that the value of the entire parcel No. 2 was $81,000. If it had been at grade without rock thereon or if the rock had been removed it would have been worth $40,000 more.

Mr. Jackson, the expert for the claimants, conceded that the presence of rock affected the value. He testified as follows: " Q. And you did not say anything about that in giving your calculations did you? A. I valued it as I found it, at $8,000 a lot, considering the fact it was above the grade and based my unit on facts as the property exists. * * * Q. Did you take off anything for the

cost of excavating the rock and earth? A. I did not deduct it. I allowed that in the unit. Q. What would your unit have been if Fort Washington Avenue lots had been on grade instead of above? A. $11,000 a lot. Q. $11,000 a lot. For a lot 25 x 100? A. Yes. Q. So you would have taken off $3,000 a lot for rock and earth? A. Yes. Q. What would your unit have been on Northern Avenue 25 x 100 feet, parcel 1, if there was no rock and earth above grade? A. $8,000. Q. Then you have not taken off anything? A. Northern Avenue lots are on grade. Q. You assumed that all of the Northern Avenue portion was on grade? A. Practically so. On the rear end; on the rear end towards the center there is about 45 cubic yards, but that is immaterial. Q. Now assuming that on the Northern Avenue end that there is nearly 600 yards above grade, would you have taken off anything; 600 cubic yards? A. No, I don't take anything off there. My information is only 425 cubic yards."

The important fact disclosed by this testimony is that the witness for the claimants agrees with the experts for the city that because of rock and earth on the lots above grade, they are less valuable than if on grade. The complaint, therefore, that the city's witnesses should not have considered the fact that these lots were partly covered with rock appears to be without merit.

To meet this testimony the claimants say they would have been able to build on the irregular rock formation. It was shown that such a course would be permitted only under certain conditions. Irrespective of what might be built, Mr. Jackson, in effect, testified that the market value of the lots upon which there was rock at the time of the taking was decreased at least $3,000 a lot, and that it was proper to consider that fact.

We are told that the owner is an experienced operator, and that he paid $117,500 for this property and gave back a purchase-money mortgage for $92,500.

The city says that this transaction was not consummated till it was known that this property was to be taken for a school site, and in addition that the property was not taken directly by the claimant.

The property was sold by the owner to the Wilstock Holding Company, and resold to the claimant, the Esam Holding Corporation. Although it is admitted that the stock in both corporations was in the same ownership, and that the first purchaser of record, the Wilstock Holding Company, was a dummy for the Esam Holding Corporation and that the Esam Holding Corporation paid the consideration for the same, nevertheless, stamps indicating a consideration of $155,000 were placed on the deed. The reason for this transaction does not appear.

An award may not be reversed because it is less than a mortgage on the property. (*Matter of City of Brooklyn*, 73 Hun, 499.) In that case it was held that it was not the duty of the commissioners appointed to appraise land taken for a public use to award an amount equal to or greater than the mortgage on the property. The court said: " It is not obligatory upon a commission appointed to appraise lands taken for public use that an award shall be made greater than the mortgage on the property. The value only is to be assessed, and the money will go where justice requires it to go and no further. Otherwise an excessive mortgage would prevent condemnation for public use. The evidence as to value is very full, and even if under strict rules of evidence something was improperly admitted or rejected it did not affect the result."

The property taken may not be worth the amount said to have been paid for it and may not be worth the amount of the alleged mortgage. It is well known that many mortgages are for more than the value of the property as is evidenced every day by foreclosure sales and deficiency judgments.

The fact that the amount awarded is less than the value given by experts for either the city or the claimants is not ground for reversal. Expert or opinion evidence if unreliable may be wholly disregarded. That is true of the testimony of all experts.

In *Matter of City of New York* (*Inwood Hill Park*) (197 App. Div. 431, 435, 436) this court said in refusing to disturb an award: " The mere fact that the court did not accept the testimony of the city's experts as to value does not show that he was influenced by the fanciful and speculative plan presented by the claimants. The court in these proceedings is governed by the same rules as were applied to commissioners in condemnation prior to the adoption of the amendment to the Constitution and the resulting legislation. * * * The court views the property, and as was said in a recent case: ' The commissioners, of course, are expected to consider the evidence. But their function is not merely to pass upon the credibility of witnesses, especially experts produced by the parties, or to decide which set of such expert witnesses reveals itself as more correct in estimate, and then slavishly adhere to that set. The commissioners are to exercise their own judgment, and they may arrive at their conclusion in disregard of the figures of any or all experts. They are " untrammeled by technical rules of evidence and unrestricted as to their sources of information. * * * They shall be guided by their own judgment and experience, rather than by the opinions of witnesses." ' (*Matter of Bronx Parkway Commission*, 192 App. Div. 412, 418.) "

We find no error in the theory adopted by the court in arriving

First Department, February, 1928.    [Vol. 222

at the value of the property, and, therefore, the decree appealed from should be affirmed, with costs.

DOWLING, P. J., and FINCH, J., concur; McAVOY and O'MALLEY, JJ., dissent.

McAVOY, J. (dissenting). I think the award made in this proceeding for damage parcel No. 2 was made on erroneous principles of law and misjudgment of the facts and through failure to take cognizance of testimony as to possible use of the property and ignoring of testimony as to the actual sale of the property for much more than the award within a recent period and the mortgaging of the property for more than the award.

The award is obviously made on the city's experts' notion that over $40,000 worth of rock would be required to be removed before the lots would be available for building purposes whereas the weight of the proof indicates that the lots could be improved without the removal of any great amount of this rock and utilized for apartments with a central entrance on the street and both frontages taken advantage of by a proper building. Take this proof as a basis of calculation and we get the fundament of the award. The expert first admitted that property on Washington Heights is sold " as is " with whatever rock may be on the property and then testified: " Q. Now I understand you to qualify your testimony on your direct examination by stating that $81,757 represented the net value after deducting $40,380 for the cost of the removal of the rock? A. That is right. * * * Q. What is the value of the claimants' property in the condition you found it in with the rock on the date of vesting title; what you could sell it for to a purchaser? Mr. Mayo: He has answered that. He has given his value under the conditions. The Court: Let him give it again. A. $81,581.84. Q. Haven't you already deducted $40,000 in arriving at that value of $81,000? A. Yes."

He further testified: " Q. Isn't your value $121,000 less $40,000 to remove the rock? A. No, my value of $121,000 is figured on lots on grade. Q. Well, that is figuring the rocks off to grade, isn't it? A. Yes. Q. So it is $121,000 less the cost of removing the rock, which you have accepted as being $40,000, and in that way you arrive at the value of eighty thousand? A. Yes."

The evidence adduced by both the claimant and the city shows that the best use for which damage parcel No. 2 was available at the time the city acquired title thereto was for apartment house purposes; and the evidence of the city's witnesses as well as that of the claimant's shows that apartment houses could be built on the damage parcel without the removal of the rock to the grade of the

avenues on which the property fronts. The claimant was entitled to have the damage parcel appraised at its market value for its best available use.

In disregarding the evidence of the consideration paid. by the claimant for damage parcel No. 2 as some evidence of the value of the property at the time the city acquired title thereto, there was a lack of consideration of claimant's proof.

The learned trial court stated that if it received evidence of the sale of damage parcel No. 2 from Sicher and others to the Wilstock Holding Corporation and the transfer from the latter corporation to the claimant it would take it " with more than a grain of salt " and that there was no use in taking evidence " that may be suspected of not being a true standard of the value."

There was no proof of *mala fides* and this evidence of a recent sale should have been given heed.

The mode of award so departed from the constitutional standard of requirement for just compensation to the owner according to the nature of his property and its adaptability for profitable use that there must be a new trial to ascertain what would be a proper award.

The decree appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellants to abide the event.

O'MALLEY, J., concurs.

Decree affirmed, with costs.