*434 Van Voorhis, J.
(dissenting in part). Except in case of damage parcels 90 and 190, which contain modern apartment houses, the weight of the evidence appears to sustain the valuations of the Appellate Division. An area of six blocks, extending from the north side of West 97th Street to West 100th Street, between Amsterdam Avenue and Central Park West, has been condemned as substandard and unsanitary. What remains of the economic life of the properties is short for that reason. The trial court capitalized the net income from properties on the side streets at 9%; on Columbus and Amsterdam Avenues at 8%; and on Central Park West at 7%%. On the hearing of objections to the tentative valuations, the trial court said that these capitalization rates, derived from the testimony of one of the city’s experts, were ‘ ‘ lower than in any proceeding that I have ever had before. I am talking now with respect to tenement houses. In my opinion at least * * * ten per cent of this award was higher than I would have given if they hadn’t capitalized their appraisal of the value of these properties at nine per cent. That was their testimony.”
Then, after stating in accordance with the established law that ‘ ‘ the court can disregard the experts’ testimony, if in his opinion it doesn’t square with his judgment ” (Matter of City of New York [School Site—Esam Holding Corp.], 222 App. Div. 554, 559, affd. 250 N. Y. 588; Matter of City of New York [East 36th St.], 168 App. Div. 463, 464, affd. 217 N. Y. 621), the trial court followed this real estate expert by using lower percentages (resulting in higher valuations) than he had said that he thought were correct. In modifying,- the Appellate Division reduced these awards into the range where they would have been if the Trial Justice had not deferred to the capitalization rates given by this expert witness. But the circumstance that the capitalization percentages would have ranged from 8% to 10%%, if one were to capitalize the net rentals so as to result in the awards as modified by the Appellate Division, does not demonstrate that the Appellate Division followed exclusively that method of valuation in reaching its results. The Appellate Division said:
“ While we are reluctant to disturb awards in condemnation made by an able and experienced Special Term Judge who has seen and heard the witnesses and viewed the properties, we believe that it is our duty to do so if we find that the Special Term has failed to give the conflicting evidence the relative weight that *435 it should have and thus has arrived at values which'are excessive or inadequate (Matter of City of New York [Newton Cr.], 284 N. Y. 493, 497). We think that in the present case the awards for buildings were excessive in the instances where we modify, and that this result was effected because in estimating building values based on a capitalization of income method a rate was used that did not duly consider the general depreciated condition of the area. Income remained high in this depreciated section because the property was almost universally used for rooming purposes and space, was at a premium. But the neighborhood was substandard, causing the property to be taken for slum clearance. The last factor would have to be a decided influence on the prices that buyers would have paid for these properties.
11 Accordingly, we modify the decree by reducing the building values as follows: * * * ”
It is quite evident that the schedule of modified awards which follows this statement was based by the Appellate Division upon all of the valuation factors in the evidence, including sales value, assessed value, cost value, economic value, and so forth, and not alone upon capitalization of net rentals. This is indicated, among other matters, by the statement in the Appellate Division’s opinion that it is its duty to modify “if we find that the Special Term has failed to give the conflicting evidence the relative weight that it should have and thus has arrived at values which are excessive or inadequate If the only element of value which actuated the Appellate Division had been the expert opinion testimony of capitalization percentages, reference would not have been made to ‘1 the conflicting evidence ’ ’. There was no conflict in the testimony about capitalization percentages which could have resulted in reducing these awards. The Appellate Division found what it deemed to be the correct values based upon all of the evidence. The circumstance that when expressed in terms of capitalization percentages, such percentages exceeded those to which any expert testified, does not signify that the Appellate Division went beyond the record in rendering its decision. No expert witness testified to a capital percentage in excess' of 9% ; and if that were all that the Appellate Division went upon, it would have found no conflict in the evidence. The conflict arises from the elements of value supplied by the purchase prices, sales, assessed values and other factors used in valuation of real property. Consequently the bare circumstance *436 that no expert witness testified to capitalization percentages as high as these does not require reversal. The Appellate Division’s awards exceeded the valuations placed upon these properties by .some of the experts who testified. What the Appellate Division did more nearly accords with the realities.
The final order entered upon the decision of the Appellate Division should be modified by reinstating the awards of the trial court with respect to damage parcels 90 and 190 and, as so modified, should he affirmed.
Conway, Ch. J., Desmond and Dye, JJ., concur with Fuld, J., Van Voorhis, J., dissents in an opinion in which Froessel, J., concurs; Burke, J., taking no part.
Order reversed, etc.