In the Matter of Acquiring Title by the CITY OF NEW YORK, Appellant, to Certain Lands and Premises Situated on the Northerly Side of Jennings Street, between Longfellow Avenue and Boone Avenue, in the Borough of The Bronx, City of New York.

CHARLOTTE BLUMENTHAL and Others, Respondents.

First Department, November 30, 1923.

**Condemnation — city of New York — value fixed is greatly in excess of real value — award based on so-called short lot rule — proof as to rule applied is insufficient — order confirming award reversed.**

An award in condemnation proceedings should be reversed where it appears not only that the value fixed is greatly in excess of the real value of the land taken, but also that while the basis of the award is stated to be the short lot rule, there is no adequate proof of what short lot rule was applied in estimating the damage.

APPEAL by the City of New York from a final decree of the Supreme Court in proceedings for the condemnation of real property for a school site, entered in the office of the clerk of the county of Bronx on the 30th day of December, 1922.

*George P. Nicholson*, Corporation Counsel [*Charles J. Nehrbas* of counsel; *Henry W. Mayo* with him on the brief], for the appellant.

*Michael J. Mulqueen* [*Charles Lamb* with him on the brief], for the respondents Charlotte Blumenthal and others.

*Thomas K. Mahlon*, for the respondent William H. Werfelman.

McAVOY, J.:

While the court, sitting to condemn land for a public use, is untrammeled by technical rules of evidence and unrestricted as to its source of information as to values, and should be guided by its own judgment and experience rather than by the opinions of expert witnesses, yet the court must consider relevant evidence on values in the vicinity as established by sales of similar properties and the prices paid for the very land itself within a not too remote

period from the date of the vesting of title in the city. That this was not done in this instance is evidenced by the awards made in the tentative, and confirmed in the final decree.

For parcel No. 1 is awarded a sum over double the value its owner placed upon it within a year of the vesting of title, in a proceeding to reduce the assessment for taxation against the land, where the owner swore that the objection to the valuation for assessment was based " on recent auction sales in the immediate vicinity. This was a voluntary sale. The adjoining lots brought $250 a piece."

The award made for parcel No. 2 presents an astounding departure from prevalent practice for determining with some approach to accuracy the fair market value of land. For this parcel an award is made which is nearly eight times the *actual amount* paid for this parcel by its present owner within ten months of the taking, which sum was paid at a voluntary public auction sale, which hitherto has had general repute as a proper basis for estimating the current equivalent of a fair marketable price. With these results as extravagant awards this court would not have power to interfere purely on a basis of difference of opinion as to values; but it is called upon to reverse solely when it appears that an erroneous rule of damage has been adopted by the court which made the award, or an erroneous conclusion of law has been applied to the facts in proof of damage. In the memorandum of the court announcing the basis of the awards to be made, it is stated that the short lot rule is to be applied in fixation of the entire award for each parcel. It seems to us impossible to find any adequate proof of what short lot rule was employed in the estimate of damage, and that what proof there was appears so confused, vague and unsatisfactory as to afford no reasonable ground for making it the basis of a rule of compensation for damage in the taking of land for a public use.

The record reads on this matter: " Q. The rules you admit for valuing interior land with no street frontage, run from one-half to a third of the value per square foot for land in the same ownership in the same locality that abut on the street, don't they? A. Yes, that is true. Q. You have discarded all those rules, such as the Harmon-Neill rule? A. No; the Harmon-Neill rule * * * Q. You will admit those rules call for only half or a third of the valuation for interior land? A. Not under the Hoffman-Neill rule. * * * Q. Take the Hoffman rule, are you familiar with it? A. I am. Q. Does that make any difference in valuation between a part of a lot that does not front on a street and that part which does front on a street? A. No; the Hoffman-Neill rule applies to a lot 100

First Department, November, 1923. [Vol. 207

feet in depth. The Hoffman-Neill rule, for the first foot in depth gives a valuation of 6.76% of the value of the entire lot, and the rear 1 foot, it gives a valuation of only 59/100ths of 1 per cent. Q. As you get back further from the street that rule makes the land less valuable per square foot? A. Yes. Q. Isn't it obvious regardless of any rule that as you go back from the street the land gets proportionately less valuable, whether in the same ownership or not? A. In excess of 100 feet in depth, yes. Under the present tenement house rule, however, a plot 100 feet by 125 feet is equally valuable in certain locations as lots in other locations, only 100 feet in depth. * * * The Court: That leads me to ask you whether the rules that have been spoken of are sufficiently identified on the record. [The City's Counsel]: No, they are not. * * * The Court: There is testimony here about the Hoffman-Neill rule and other rules to which different names have been given. It has not been proved that those are well known rules, and I am speaking now, not to get it right in my mind, but to have your record right. [Counsel for City]: * * * Chancellor Hoffman, years ago, for convenience in partition suits evolved a rule that he said was based on common sense, a rule that is a kind of unwritten rule, like the common law, stating certain parts of a lot had a certain relative value, and while that rule is not to be found in any particular book except as hearsay, such as being published in the broker's diary, it has found general acceptation among the witnesses in these cases. Some of them say they do not use it, and some do, but all of them agree the rule is a certain percentage, is a kind of unwritten rule handed down from ancient times; it is not susceptible exactly of proof. The Court: It is more in the nature of custom of the trade or business? [Counsel for City]: That is it, a local custom. The Court: My thought is that as such you have not proved it sufficiently. [Counsel for City]: I cannot; my only reason for referring to the rule is to show that as a matter of fact it did differentiate between the value of that portion of the lot directly adjoining the street and the portion back from the street. The Court: Suppose you ask him whether there is among real estate brokers a well known rule known as the Hoffman rule. Mr. Lamb: The Hoffman rule was made in 1853 by old Judge Hoffman. It has been revised; they have gotten it down to the Harmon-Neill rule and the William E. Davies rule. They are arbitrary rules adopted by real estate men. The Court: If any effect is to be given to them it must be shown what they are. Mr. Lamb: Exactly. [Counsel for City]: They have been adopted and referred to by different witnesses. It would be difficult to prove the rule because they are the emanations of the brains of different individuals. The

Court: If they are well known rules, they must be susceptible of some kind of proof, even though not exact proof. [Counsel for City]: I do not know how you can prove them any more than legal custom. The Court: You can prove it by this witness. [Counsel for City]: The rule itself is immaterial except incidentally to show that all rules recognize as you go back from the street the land becomes proportionately less valuable. Q. Have you got a copy of the table showing what is known as the Hoffman rule? A. No, sir, not the Hoffman rule. Q. It is printed in the Board of Brokers' Diary? A. Yes; I have a copy of the Hoffman-Neill rule. By the Court: Q. Is there a rule among real estate brokers in connection with appraisals known as the Hoffman rule? A. There is, sir. Q. And you say you have not a copy of it? A. I have not a copy of it here, but I know practically what the rule is. [Counsel for City]: That would be only hearsay, the Board of Brokers' Diary, but I will hand it in, because everybody admits it. Q. Now, as to the Harmon-Neill rule, what is the rate per square foot in percentage of the last foot, farthest from the street? The Court: Is there such a rule as the Harmon-Neill rule? The Witness: There is the Hoffman-Neill rule. Q. Isn't there a Harmon-Neill rule also, a man named Harmon? A. His name was Harmon Neill; Judge Murray Hoffman formulated the rule known as the Hoffman rule for values where it was in two separate ownerships, not for the same lot, but for instance — The Court: Are those rules in writing? The Witness: Those rules are printed in the Real Estate Board of Brokers' Diary, yes, and are used as a general proposition by real estate brokers. The Hoffman rule has practically become obsolete for the reason that it was divided into the first 10 feet, then every 5 feet. The Hoffman-Neill rule gives the valuation for each foot as it recedes from the front of the lot to the rear of the lot. [Counsel for City]: His interpretation is not quite correct that it is obsolete. Mr. Lamb: Mr. Mayo [counsel for city] has not qualified as an expert on that. Q. Under the Hoffman-Neill rule, is not the last portion of the lot that is farthest from the street a great deal proportionately less valuable than that portion of the lot fronting on the street? A. Yes, sir. Q. The theory of that rule also is that as you go further from the street the land becomes proportionately less valuable? A. Yes, sir. Q. And that is so under every one of these rules, isn't it? A. Yes."

This testimony and colloquy indicate that no precise rule of differentiation in values was ever received by the court, either as evidence in the form of an authenticated document, or in oral proof as to what the local custom was in respect of deductions for rear lots, or lots without frontage within 100 feet of a street. It is,

therefore, obvious that whatever method of apportionment of value was used as a so-called short lot rule, it nowhere appears as to how it was applied, or if any such rule was actually employed in the calculation of damages.

For this reason the order appealed from should be reversed, with costs to the appellant, and a new trial ordered.

CLARKE, P. J., SMITH, FINCH and MARTIN, JJ., concur.

Order reversed, with costs to appellant, and a new trial ordered. Settle order on notice.