**WESTCHESTER COUNTY PARK COMMISSION et al. v. UNITED STATES.**

No. 316.

Circuit Court of Appeals, Second Circuit.

June 5, 1944.

William A. Davidson, of Port Chester, N. Y. (Frank J. Claydon, of White Plains, N. Y., of counsel), for appellants.

Norman M. Littell, Asst. Atty. Gen., Harry T. Dolan and Vernon L. Wilkinson, both of Washington, D. C., and Roger P. Marquis, of Brooklyn, N. Y., for appellee.

Before L. HAND, SWAN and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. Under the Fifth Amendment, the owner of land taken by condemnation is entitled to "just compensation." The key notion is indemnity, measured in money, for the owner's loss of the condemned property. In an effort to definitize this notion, it has been said that it requires the payment of a sum equal to the "value" of the property taken. But if "just compensation" is a baffling indefinite

concept, "value" is no loss so.[1] To mouth it is not to answer but to ask a question. In the condemnation cases, the courts, trying to contrive a practical standard, have adopted the concept of "market value," i.e., what it fairly may be believed a willing buyer (one not forced to buy) would, in fair market conditions, have given to a willing seller (one not forced to sell). As Orgel suggests, "The reference is not to actual\buyers and sellers, but to hypothetical vendors and vendees of a vaguely described state of mind, and these phantom personalities constitute perhaps the most puzzling element in any attempted elucidation of the Court's concept of 'fair market value' * * * The concept * * *, like the standards of reasonableness that are common in other branches of the law, * * * derives a large measure of its usefulness from this very vagueness, for it enables the court to adjust the rigid rules of law to the requirements of justice and indemnity in each particular case."[2] At any rate, an elastic standard, although perplexing, is often, as here, the only one available. It will not do to sneer at it. As Pekelis reminds us, "Concrete cases cannot be decided by general propositions —nor without them." [2a] As to "value" in condemnation cases, the Supreme Court has said that often "the application of this concept involves, at best, a guess by informed persons." [3] But that guess must have a rational foundation. And the owner of the land must supply the court with materials for a guess having such a foundation. For on the owner, and not on the United States, rests the burden of establishing the value. United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 273, 274, 63 S.Ct. 1047, 87 L.Ed. 1390; Ralph v. Hazen, 68 App.D.C. 55, 93 F.2d

68, 70; Welch v. T. V. A., 6 Cir., 108 F.2d 95, 101.

The government urges that the rule is that the educated guess must not include among its ingredients the element of the special adaptability of the property to the owner's use, and that, applying that rule here, it would be improper to consider the special value of the land for use by the County as a park, since an ordinary buyer could not so use it; as a variant of this argument, the government asserts that the unique character of the owner, as distinguished from the unique character of the land, is not a proper factor. While, with some qualifications, that contention is not without support,[4] we are not ready to say that it states the correct rule with sufficient nicety. It may be that, if the County had proved the worth in money terms of the use as a park site, it would be entitled to compensation therefor. But we need not here consider that question since, although the County was at liberty to do so, it presented no evidence on that issue. Its expert witnesses based their figures exclusively on a capitalization of the rent in the short-term leases to the United States; and that rent had no bearing on the worth of the land to the County for its utilization as a park.

The exemption of the land from taxation when owned by the County is immaterial, since an ordinary buyer would not have enjoyed such an immunity. True, the land in the hands of the United States is thus exempt, but the United States did not acquire that exemption through condemnation proceedings. Nor is it relevant that the County, without authorization by the State, could not sell; we must regard the situation as if it could,

---

[1] Andrews v. Commissioner, 2 Cir., 135 F.2d 314, 317; Commissioner v. Marshall, 2 Cir., 125 F.2d 943, 946, 141 A.L.R. 445.

[2] Orgel, Valuation Under Eminent Domain, 810, 837.

[2a] Social Research, September 1944.

[3] United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 280, 87 L.Ed. 336, 147 A.L.R. 55.

[4] See, e. g., Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87

L.Ed. 336, 147 A.L.R. 55; United States v. Chandler-Dunbar Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063; Boston Chamber of Commerce v. Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725; Omnia Co. v. United States, 261 U.S. 502, 43 S. Ct. 437, 67 L.Ed. 773; Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L. Ed. 644; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934; United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; United States v. Honolulu Plantation Co., 9 Cir., 122 F. 581, 585; Orgel, Valuation Under Eminent Domain, Chapter III.

as if the property were being voluntarily sold by a seller free to do so.

The government's expert witnesses, therefore, employed the proper criterion: what an ordinary buyer under no compulsion to buy would pay a seller able to sell and under no compulsion to do so. As the land, if acquired by such a buyer, would have been subject to zoning for residential purposes, those witnesses correctly considered its value as thus restricted. On cross-examination, these government witnesses were asked whether they took into account the County's use for park purposes; they were permitted to answer, and said no; having in mind that the burden of proving value was on the County, we need not consider whether the witnesses' failure to allow for that factor vitiated their estimates.

The County's witnesses, employed an improper standard. They refused to testify concerning the value in the ordinary sense of that word,[5] disregarded sales of similar property in the vicinity, considered nothing but the unique worth of the land to the County for park purposes, and, as previously noted, reached their figures solely by capitalizing the rent payable under the leases to the United States. As a consequence, unless the rent under those leases constitutes a sufficient basis for ascertaining value, the only evidence on that subject consists of that introduced by the government; and clearly that evidence does not call for reversal of the judgment.

As reasonably prospective earning power is, of course, an important factor, rent paid under an existing lease of the taken land has relevance. But the United States made the short-term leases of this land when it was under a pressing need because of a threatened national crisis. The capitalization of the rent under those leases is shaky ground on which to erect an informed guess about the land's worth.[6] The government's experts

testified that the rent did not represent fair rental value; the trial court could justifiably rely on that testimony.

The only evidence of a sale at a price per square foot at a higher figure than that allowed by the trial judge was the sale to Columbia Broadcasting of a small piece of 4,000 square feet zoned for industrial use. That single piece of evidence plainly cannot compel a reversal.

2. The trial judge made some allowance for the improvements. But the County argues that it is entitled to the full value of those improvements, because the deed from the State to it provided that, if the State re-acquired the land, its liability would be limited to the amount paid for the patent, the expenses incurred in acquiring it (fixed at $350), and the value of such improvements. The County contends that, as the condemnation has prevented the reacquisition by the State, it has thus deprived the County of the possibility of ever obtaining such reimbursement. But that possibility was so remote as to be incapable of measurement in money.[7]

3. The County asserts that the trial judge erroneously failed to allow anything for the damages to the adjacent property owned by it, i.e., for so-called severance damages. Assuming, arguendo, that recovery can be had for such injury, there can be no recovery here. For, although the County introduced some evidence tending to show that the taking would restrict the uses of such adjacent property, it offered no evidence whatever as to the money worth of the resultant loss and, accordingly, did not discharge its burden of proving damages.

4. In Robinson v. New York Elevated R. Co., 175 N.Y. 219, 67 N.E. 431, the Court held it reversible error to permit expert witnesses on direct examination to testify concerning sales of similar property. The County contends that, under 40 U.S.C.A. § 258,[8] the Court below was

---

[5] One of them was asked: "You do not mean to create the impression that $50,-000 would be the market value of this property as between a willing buyer and a willing seller on August 27, 1942?" He answered: "No, I do not." The other witness testified similarly.

[6] The County points to 40 U.S.C.A. § 278a, which forbids a government officer to lease "any building or part of a building" at a rental in excess of 15% per annum of the fair market value of the

rented premises. As the land here is unimproved, that statute counts for nothing in this case. Even if it did apply here, it would at most disclose that an army officer, not shown to be a real estate expert, thought the land was worth $20,-000.

[7] Cf. United States v. 53¼ Acres of Land, 2 Cir., 139 F.2d 244, 247.

[8] That section reads: "The practice, pleadings, forms and modes of proceedings in causes arising under the provi-

required to follow the doctrine of the Robinson case and that, accordingly, we must reverse because the government's expert witnesses were allowed to testify on direct examination as to such sales. As we agree with the courts of most states and with most commentators that the doctrine of that case is unsound, we think that it should never be followed if there is any escape from it. The government suggests that the Robinson doctrine no longer prevails in New York.[9] We shall, however, assume that it does. Even so, it is inapplicable here. For we have held that, under the Conformity Act, 28 U.S.C.A. § 724, the wording of which is substantially the same as 40 U.S.C.A. § 258, state rules of evidence do not bind the federal courts, when to follow those rules would "unwisely incumber the administration of the law." Massachusetts Bonding & Insurance Company v. Norwich Pharmacal Company, 18 F.2d 934, 939; Hawthorne v. Eckerson Company, 2 Cir., 77 F.2d 844, 846; see also Chicago & N. W. Ry. v. Kendall, 8 Cir., 167 F. 62; De Soto Motor Corporation v. Stewart, 10 Cir., 62 F.2d 914, 917, 918.

We think that the remarks in United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, do not indicate a contrary view. But even if they do, and if, therefore, the Robinson rule is applicable in the instant case, the deviation from it here caused no prejudice to appellants. This appears from the following: The government's witnesses testified on direct examination to eleven comparable sales. As to seven of those sales, however, the same testimony had previously been elicited from the County's witnesses on cross-examination; and the New York courts (illogically, to be sure) appear to have held that such testimony on cross-examination may be accepted as affirmative evidence of value and is not limited to its use in testing the witness' credibility.[10] The four sales concerning which the government's witnesses testified on direct, but concerning which the County's witnesses were not questioned on cross-examination, were at a higher rate per square foot than the other seven sales; accordingly, although those four sales were at a lower rate than the trial judge used in arriving at his judgment, testimony concerning them was advantageous to the County.

True, in the Robinson case, the court held that the admission of the improper evidence constituted reversible error despite the fact that the trial court had ignored that evidence and had rested its decision on other competent testimony. But the New York courts, since the Robinson case, have ruled that, in such circumstances, the reception of the improper evidence is harmless.[11] These rulings, to be sure, occurred in cases not involving condemnation; but that would seem to be a distinction without significance. Even, however, should we disregard those rulings, we would nevertheless conclude that there was no prejudice here. For, as under Rule 81(a)(7), 28 U.S.C.A. following section 723c, the new rules of procedure are applicable to appeals in condemnation

sions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in courts of record of the State within which such district court is held, any rule of court to the contrary notwithstanding."

[9] The government refers to a New York statute (Laws of 1932, Chapter 391) specifically abrogating the Robinson doctrine, on certain conditions, in condemnation proceedings in the City of New York (see Orgel, Valuation Under Eminent Domain, 485, 486), and argues thus: The Southern District of New York includes New York City, and it is absurd to suppose that conformity depends upon the part of the district in which the land under condemnation is situated; cf. Mallett v. United States, 8 Cir., 137 F.2d 95. The government also cites Heiman v. Bishop, 272 N.Y. 83, 4 N.E.2d 944,

where, under the wording of another New York statute, not relating to condemnation, the Robinson doctrine seems to have been ignored.

[10] See Orgel, Valuation Under Eminent Domain, 482-483. In Matter of City of New York (School Site), 222 App.Div. 554, 557, 226 N.Y.S. 536, 539, (affirmed 250 N.Y. 588, 166 N.E. 335) the court said: "Despite the argument of the appellant and the wholly unreliable figures of some of the experts, so called, the market value of this property may be arrived at by a comparison of the sales of property similarly situated and in the same neighborhood"; cf. Matter of City of New York (Jennings Street), 207 App. Div. 170, 201 N.Y.S. 799.

[11] See, e. g., Manhattan Life Insurance Co. v. Schwartz, 274 N.Y. 374, 9 N.E. 2d 16; Misner v. Strong, 181 N.Y. 163, 73 N.E. 965.

cases, we must, under Rule 43(a), apply the more generous rule of evidence; therefore, the federal "harmless error" statute (28 U.S.C.A. § 391) governs; under that statute, the admission of the testimony was surely harmless. Cf. United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L. Ed. 336, 147 A.L.R. 55.

5. Nothing is left to this appeal but, in effect, a request to us to conduct a trial de novo. This we cannot do. The trial court's determination of the facts must stand unless it is unsupported by substantial evidence.[12] We see no warrant for reversal on that score.

Affirmed.

[12] See 28 U.S.C.A. § 879; F. R. C. P. 81(a) (7). Cf. Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 895; Miller v. United States, 3 Cir., 137 F.2d 592; Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 77 L.Ed. 439; United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 272, 63 S.Ct. 1047, 87 L.Ed. 1390.