[No. 30981    Department Two.    June 2, 1949.]

THE STATE OF WASHINGTON, *on the Relation of Maurice Veys et al.,* Plaintiff, v. THE SUPERIOR COURT FOR COWLITZ COUNTY, *J. E. Stone, Judge,* Respondent.[1]

[1]Reported in 206 P. (2d) 1028.

*Ronald Moore* and *Lester Huntington,* for relators.

*The Attorney General* and *Elroy F. Wiehl, Assistant,* for respondent.

GRADY, J.—This proceeding is before the court upon the return of the superior court of Washington for Cowlitz county in response to a writ of review. The question to be determined is whether the director of highways of the state of Washington may acquire by condemnation the right of access of a property owner whose land abuts on an existing primary state highway.

Some years ago primary state highway No. 1, consisting of two lanes, was established and constructed, running from Vancouver, Washington, northerly through Cowlitz and other counties. On August 17, 1937, the director of highways established permanent state highway No. 1, ultimately to be of four lanes, also running from Vancouver northerly through Cowlitz and other counties. Rights of way through the lands of the relators in Cowlitz county were acquired from their predecessors in interest in the years 1938 and 1942. The necessary clearing, grading and draining of the highway in the vicinity of the property of relators was completed in December, 1948.

On March 25, 1947, the director of highways established a portion of permanent state highway No. 1 between two certain designated points, which included that portion upon which the property of the relators abutted, as a "limited access highway" and directed the right-of-way division of the highway department to acquire the necessary access rights. In addition to the access rights, the highway department sought to acquire from relators a strip of land adjacent to the highway and a small tract of land upon which to deposit waste materials.

On December 3, 1948, a hearing was had before the court, the purpose of which was to secure an order adjudicating public use as to both the land and the right of access to the

highway. On that date an order adjudicating public use was entered as to the strip of land and the deposit area, but the court reserved the question as to the right of the state of Washington to acquire the access right. On March 22, 1949, the action was brought on for trial to determine the compensation to be paid to relators for the taking and damaging of their property. During the progress of the trial, the court adjudged that the state had the authority to acquire the access right of relators by condemnation, but was of the opinion that, if the trial proceeded to verdict of the jury, the order of adjudication could not be reviewed on appeal. Thereupon the trial was suspended until the question raised could be heard by this court upon a writ of review.

The relators do not question the validity of the adjudication for public use of the strip of land or waste site, but do challenge the order of March 22, 1949, in so far as it authorizes the appropriation of their access right to permanent state highway No. 1 by condemnation.

The authority to condemn and appropriate privately-owned lands for highway purposes was first given to the director of highways by section 25, p. 146, of chapter 53 of the Laws of 1937 (Rem. Rev. Stat., Vol. 7A, § 6400-25). This section reads as follows:

"Whenever it is necessary to secure any lands for a right of way for any primary state highway, or for the drainage thereof or construction of a protection therefor or so as to afford unobstructed vision therefor toward any railroad crossing or another public highway crossing or any point of danger to public travel or for the purpose of acquiring sand pits, gravel pits, borrow pits, stone quarries or any other land for the extraction of materials for construction or maintenance or both, or for any site for the erection upon and use as a maintenance camp, of any primary state highway, or any site for other necessary structures or for structures for the health and accommodation of persons traveling or stopping upon the primary state highways of this state, or for any other highway purpose, together with right of way to reach such property and gain access thereto, the director of highways is authorized to acquire such lands in behalf of the state by gift, purchase or condemnation. . . ."

We find nothing in our reported decisions to indicate that the director of highways has ever claimed that, in acquiring a right of way for the construction of a primary state highway by condemnation proceedings, the right of access to and egress from the highway by the abutting property owner was in any way impaired or affected. A right of access is a very valuable one. In addition to such a right, the traveling public upon the highway may drive directly to and from the property of the abutting owner, thus enhancing its value and enabling him to put his property to commercial uses.

The increase in motor vehicle traffic has made it necessary and advisable to construct wider highways, divide them into lanes, and impose strict traffic regulations in the interests of safety; and to this end a number of states have provided legal machinery for the establishment of a new kind of highway denominated as a "limited access highway." In the establishment of such a highway, the public acquires not only the land needed for its construction, but also the access right of the abutting property owner so that he may not enter upon it directly from his property, nor can he or the traveling public go onto his property from the highway. At suitable places, intersecting highways or other means are provided for such ingress and egress. Thus heavy traffic may move with greater rapidity and in greater safety.

In line with this trend, the legislature enacted chapter 202, p. 868, of the Laws of 1947 (Rem. Supp. 1947, § 6402-60 to -71). The act defines a "limited access facility" as

" . . . a highway or street especially designed or designated for through traffic, and over, from or to which owners or occupants of abutting land, or other persons, have no right or easement, or only a limited right or easement of access, light, air or view by reason of the fact that their property abuts upon such limited access facility . . . ."

The act gives the director of highways authority to establish such highways whenever in his opinion traffic conditions justify such special facilities and to regulate, restrict or prohibit access as to best serve the traffic for which such facility is intended. The act provides that:

"No person shall have any right of ingress or egress to, from or across limited access facilities to or from abutting lands, except at such designated points at which access may be permitted by said highway authorities upon such terms and conditions as may be specified from time to time."

It is further provided that the highway authorities of the state

" . . . may acquire private or public property and property rights for limited access facilities and service roads, including rights of access, air, view and light, by gift, devise, purchase, or condemnation . . ."

The title to the real estate acquired under the provision of the act is in fee simple instead of merely an easement, and the public may acquire an entire lot, block or tract of land if by so doing the interest of the public will be best served, even though such entire lot, block or tract is not immediately needed for the limited access facility.

The foregoing is the material part of the original proposed enactment so far as the question now under consideration is concerned. This was senate bill No. 98. The Senate records show that, when the bill came up for consideration, the question arose as to whether the authority given to acquire access rights should extend to existing highways or be limited to those to be established and constructed in the future, and by a series of amendments very definite provisions were made that the act and authority given thereunder should apply only to "new locations," and this term was defined as " . . . a new highway or new street and for the purposes of this act shall not apply to existing highways and streets." When senate bill No. 98 reached the House of Representatives, § 2 was amended by adding thereto the following:

"*Provided further*, That whenever said highway authorities designate and establish a limited access highway and such highway connects with an existing highway, then such existing highway under no consideration shall be determined a 'new location.'"

Section 6 was amended so as to add the words "only on new locations."

The net result of the action of both the Senate and House of Representatives was, by striking certain words from the original bill and adding other words, to limit the power to condemn rights of access to what was defined to be "new locations" and plainly to indicate that the time had not yet arrived in this state when the valuable right of access possessed by the abutting land owner on existing highways should be taken from him by condemnation proceedings, and that such a right might be so taken only when a limited access highway might at some future time be established and constructed on a new location.

We have set forth the history of the legislation and the material parts of the final enactment for the purpose of showing the legislative intent and its declaration of public policy with reference to when and under what circumstances a property owner may be deprived of his right of access and in aid of our construction of Rem. Rev. Stat., Vol. 7A, § 6400-25, above quoted, upon which the director of highways relies as giving authority to acquire rights of access by condemnation in connection with the widening and construction of permanent state highway No. 1.

The substance of the argument of the director of highways is that, inasmuch as he is given authority to acquire "lands" for state highway rights of way, it follows he has the authority to acquire "all estates, rights, interests and easements in or appurtenant to said land" and that the right of access which an abutting owner has to a public highway is in the nature of an easment appurtenant to the owner's abutting property, which is property or a property right and therefore one of the component parts of land. Many authorities are cited in support of this argument, and special reliance is placed upon the cases of *Burnquist v. Cook*, 220 Minn. 48, 19 N. W. (2d) 394, and *State ex rel. State Highway Commission v. James,* 356 Mo. 1161, 205 S. W. (2d) 534.

The authorities cited recognize the general rule that, while the creation of a public highway at the same time subordinates the land on which it is established to the ease-

ment of access in so far as abutting land owners are concerned, there is nothing in this fact which prevents authorized public authority from later extinguishing such easement in subsequent condemnation proceedings, unless restricted from so doing by statute. An examination of the statutes in the states of Minnesota and Missouri will disclose that they are couched in very broad, general language and contain no such restrictions or limitations as are found in chapter 202 of the Laws of 1947 (Rem. Supp. 1947, § 6402-60 to -71). The courts of those states have construed their statutes to permit the condemnation of access rights of abutting owners on existing highways as well as those to be established and constructed in the future, but we can not so construe our statute, especially in view of legislative limitations.

Rem. Rev. Stat., Vol. 7A, § 6400-25, authorizes the director of highways to acquire by condemnation necessary land for a right of way for a primary state highway. In addition to the lands for the right of way, he may acquire property for the drainage thereof, or construction of a protection therefor, or to afford vision of railroad and highway crossings. He may also acquire sand pits, etc., for the extraction of materials for construction and maintenance, sites for maintenance camps and for structures for the health and accommodation of persons traveling or stopping on such highways. Although this statute enumerates many things that may be acquired by condemnation in addition to the right of way and easement for the highway itself, no mention is made of rights of access, air, view, and light of a property owner whose land abuts on the highway.

It is our opinion that, in the enactment of this statute, the legislature did not have in mind the acquirement of access rights when establishing and constructing primary state highways, and that the word "lands" was used as applying only to the rights of way and easements and other purposes specifically mentioned. This conclusion is fortified by the action taken by the 1949 legislature when the question of power to acquire access rights by condemnation was

again considered by that body. Senate bill No. 108 was an act relating to limited access highway facilities and purported to amend chapter 202 of the Laws of 1947 so as to conform to the originàl senate bill No. 98 whereby the director of highways would have been given authority to acquire by condemnation access rights of abutting owners on existing highways. This bill failed of passage. The action of the 1949 legislature clearly indicates that it is the legislative policy of this state that access rights may not be acquired by condemnation, except only in cases of new locations as defined by chapter 202, Laws of 1947.

The amended order adjudicating public use made and entered March 22, 1949, by the superior court of Washington for Cowlitz county, is reversed, and the cause remanded with directions to modify the order by eliminating therefrom the part adjudicating that the access right of the relators is a public use and authorizing the appropriation of such access right by the state of Washington in connection with the construction of the highway therein referred to.

ROBINSON, MALLERY, SCHWELLENBACH, and HILL, JJ., concur.