[No. 31552.   Department One.   December 22, 1950.]

THE STATE OF WASHINGTON, *on the Relation of Smith Troy, as Attorney General, Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY, *J. E. Stone, Judge, Respondent.*[1]

*The Attorney General* and *June Fowles, Assistant,* for relator.

*Ronald Moore* and *Lester Huntington,* for respondent.

*Pebbles & Kuykendall, amicus curiae.*

SCHWELLENBACH, J.—This proceeding is by way of a writ of certiorari to review the action of the superior court of Cowlitz county in an eminent domain proceeding.

The state petitioned to have certain lands situated in Cowlitz county declared necessary for the public use as a part of primary state highway No. 1, which had theretofore been established as a part of the state highway system. After a hearing, the trial court entered an order of public use and necessity, but excepted therefrom, (a) a portion of parcel "A", as described in the petition, containing two (2) acres, more or less; (b) a portion of parcel "B" described in the petition, containing 13.5 acres, more or less; and (c)

[1]Reported in 225 P. (2d) 890.

the right of ingress to and egress from parcels "A" and "B". Parcels "A" and "B" were not needed for immediate or future highway construction, but were sought to be used for limited access facilities. July 15, 1949, the director of highways approved the following resolution:

"BE IT RESOLVED that there be and is hereby established a limited access highway, in accordance with Chapter 202, Laws of 1947, upon a portion of Primary State Highway No. 1, between the Toutle River crossing in Lot 5, Section 34, Township 10 North, Range 2 West, W. M. and in connection with the existing route of Primary State Highway No. 1 in the vicinity of Olympia, and the Right of Way Department is hereby authorized and directed to acquire property rights for limited access facilities and service roads, including rights of access, air, view and light in accordance with said law."

In order to expedite "through" motor vehicle traffic, a large number of the states have authorized the construction or adoption of "throughways" or "freeways." As a part of this plan, the highway departments are authorized to declare all or portions of such highways as "limited access highways." Rights of access from land abutting on the highways are taken in order to prevent roadside signs, service stations, motor courts, etc., thus eliminating the necessity for twenty-five and thirty-five mile zones on the "through" highways. As to the advisability of such legislation, the courts are not concerned, it being strictly a legislative problem.

In line with the other states, the legislature of the state of Washington enacted chapter 202, p. 868, Laws of 1947 (Rem. Supp. 1947, §§ 6402-60 to 6402-71). This act was considered by this court in *State ex rel. Veys v. Superior Court*, 33 Wn. (2d) 638, 206 P. (2d) 1028, and the legislative history of its enactment was discussed. Section 2 of the act provides:

"The highway authorities of the state . . . are hereby authorized to plan, designate, establish, regulate, vacate, alter, improve, construct, maintain and provide limited access facilities on *new locations* for public use wherever such authority or authorities are of the opinion that traffic conditions, present or future, will justify such special facilities: . . ." (Italics ours.)

Section 6 provides:

"The highway authority of the state . . . may designate and establish limited access highways *only on new locations*. . . ." (Italics ours.)

Section 1 provides:

"For the purposes of this act, a 'limited access facility' is defined as a highway or street especially designed or designated for through traffic, and over, from or to which owners or occupants of abutting land, or other persons, have no right or easement, or only a limited right or easement of access, light, air or view by reason of the fact that their property abuts upon such limited access facility, or for any other reason to accomplish the purpose of a limited access facility. Such highways or streets may be parkways, from which trucks, busses, and other commercial vehicles shall be excluded; or they may be freeways open to use by all customary forms of street and highway traffic. *'New locations' is defined as a new highway or new street and for the purposes of this act shall not apply to existing highways and streets.*" (Italics ours.)

Counsel have not furnished us with, nor has independent research provided, a legal definition of "existing highways." However, § 2 of the act provides:

". . . *Provided further,* That whenever said highway authorities designate and establish a limited access highway and such highway connects with an existing highway, then such existing highway under no consideration shall be determined a 'new location.' "

The testimony showed that the portions sought to be taken for limited access facilities are upon new constructions, which would be from two hundred feet to two hundred fifty feet between the center lines of the new and old constructions. However, the testimony also clearly showed that the portions sought to be taken are to be a part of primary state highway No. 1.

We have examined the statutes of all the states authorizing limited access highways and find that each state, with the exception of New York, has provided that the highway commissioner may designate either new highways or existing highways (or portions thereof) as limited access high-

ways. A few of them are: California, Calif. Stats. 1939, ch. 687, § 2, page 2204; Colorado, Laws of 1941, § 1, page 654, Laws of 1943, § 1, page 531; Indiana, Acts of 1945, ch. 245, § 3, page 1113, Acts of 1945, ch. 245, § 7, page 1113; Kentucky, Laws of 1946, ch. 225, § 7; Oklahoma, Laws of 1945, § 4, page 285; Virginia, Acts of 1950, ch. 299, § 33 and § 39; and Wisconsin, Laws of 1949, ch. 492, § 3.

Our sister state of Oregon has the following law:

"The state highway commission, in addition to and. without restricting, limiting or repealing any powers and authority which it now has, hereby is authorized and empowered to lay out, locate, relocate, adopt, establish, construct; designate, maintain and supervise the use and operation of new highways which shall be known as throughways as that term is defined in this act. Any relocated section of an existing highway and such portions of existing highways which at the time the same are designated as throughways have less than 10 commercial businesses abutting thereon catering to the motoring public in any one mile of such existing highway may be designated and constructed as or converted into a throughway by the highway commission. The term 'relocated' as used herein shall mean a highway or section thereof so located that for its construction an entirely new right of way is necessary. The authority and power of the commission shall extend to and include state highways within the corporate limits of cities and towns, and with the approval of the municipal authorities may extend to and include city streets." [L. 1947, ch. 226, § 4.]

It will thus be seen that Washington and New York stand alone in not permitting the establishment of limited access facilities on existing highways or portions thereof.

In *State ex rel. Veys v. Superior Court,* 33 Wn. (2d) 638, 206 P. (2d) 1028, we said:

"The foregoing is the material part of the original proposed enactment so far as the question now under consideration is concerned. This was senate bill No. 98. The senate records show that, when the bill came up for consideration, the question arose as to whether the authority given to acquire access rights should extend to existing highways or be limited to those to be established and constructed in the future, and by a series of amendments very definite provisions were made that the act and authority given thereunder

should apply only to 'new locations,' and this term was defined as '. . . a new highway or new street and for the purposes of this act shall not apply to existing highways and streets.' When senate bill No. 98 reached the House of Representatives, § 2 was amended by adding thereto the following:

" '*Provided further,* That whenever said highway authorities designate and establish a limited access highway and such highway connects with an existing highway, then such existing highway under no consideration shall be determined a "new location." '

"Section 6 was amended so as to add the words 'only on new locations.' "

We then said:

"The net result of the action of both the Senate and House of Representatives was, by striking certain words from the original bill and adding other words, to limit the power to condemn rights of access to what was defined to be 'new locations' and plainly to indicate that the time had not yet arrived in this state when the valuable right of access possessed by the abutting land owner on existing highways should be taken from him by condemnation proceedings, and that such a right might be so taken only when a limited access highway might at some future time be established and constructed on a new location."

That case also pointed out that during the 1949 session, senate bill No. 108 was introduced. It purported to amend chapter 202 of the Laws of 1947 so as to conform to the original senate bill No. 98, whereby the director of highways would have been given authority to acquire by condemnation access rights of abutting owners on existing highways. This bill failed to pass.

The act provides for the establishment of limited access highways only on new locations. Under it, a new location is a new highway and does not apply to an existing highway. The lands sought to be condemned for limited access purposes were to be used as a part of primary state highway No. 1, an existing highway. The trial court was correct in holding that the lands in question were sought to be acquired without authority in law, and its order of public use and necessity is affirmed.

BEALS, MALLERY, and GRADY, JJ., concur.

HAMLEY, J. (dissenting)—In my opinion, (1) the portion of highway in question is a "new location" within the meaning of the 1947 act; and (2) even if it is not, this is not determinative of the director's authority to acquire fee title to the tracts described in exceptions (a) and (b).

The majority properly points out that the act defines "new locations" as a "new highway" or "new street" and further provides that the act shall not apply to "existing" highways and streets (Rem. Supp. 1947, § 6402-60). This is not a very helpful definition. In order to determine what is meant by "new highway" and "new street," it is necessary to consider the purpose of the legislature in setting up this "new location" limitation. The reason why the legislature limited the director's authority, in the case of limited access facilities, to "new locations" was so that "the valuable right of access possessed by the abutting land owner on existing highways" should not be taken from him by condemnation proceedings. *State ex rel. Veys v. Superior Court,* 33 Wn. (2d) 638, 643, 206 P. (2d) 1028.

It becomes clear from this that, in order for a highway or street to be considered a "new highway" or "new street," within the meaning of the 1947 act, it must (1) be on property or right of way acquired *after* the effective date of the 1947 act, and thus "new"; and (2) be so located that there is no substantial interference with the access rights of abutting owners on and to the *then existing* highway. Where a proposed highway or street meets both of these tests, the legislative purpose, as defined in the *Veys* case, has been met, and the director's authority as to the acquisition and construction of limited access facilities attaches.

The section of highway in question meets both of these tests. The relocated route abutting the condemnee's tracts was not even laid out, much less acquired, until two years after enactment of the 1947 act. It is this factor which distinguishes the instant case from the *Veys* case, where the rights of way in connection with which the director sought to impose limited access rights were acquired in 1938 and 1942.

The section of highway here in question is located, for the most part, several hundred feet from the present location. The existing location is to be retained for local use. It will not intersect the new location at grade. There will be overcrossings and undercrossings where the old and new highways cross. Only one such crossing is contemplated within the parcels involved in this suit. There will be turnouts and cloverleaf arrangements which make it possible to pass from one highway to the other by connecting roads. This is exactly the plan provided for by the statute, for § 6 of the 1947 act (Laws of 1947, chapter 202, § 6, p. 871; Rem. Supp. 1947, § 6402-65) contains the following:

"... The state, counties and incorporated cities and towns shall have authority to provide for the elimination of sections at grade of limited access facilities with existing state or county roads, and with city or town streets, by grade separation or service road, or by closing off such roads and streets at the right of way boundary line of such limited access facility; and after the establishment of any such facility, no highway or street which is not part of said facility, shall intersect the same at grade. ..."

The record does not disclose that any property owner abutting on the existing highway will have his access rights as to *that* highway interfered with in any respect by the acquisition and construction of the new section of highway here in question. There is hence no impairment of presently established valuable rights of access.

Balanced against this evidence of a new and substantial deviation between the existing and new highways, there is only the fact that the new highway is a relocation of the old one, and has been given the designation formerly held by the old one—primary state highway No. 1. The legislative definition of primary state highway No. 1 has never been more than a designation of a general north-south route from Blaine to Vancouver, through certain named cities and valleys "by the most feasible route." See Laws of 1913, chapter 65, § 2, p. 221; Laws of 1937, chapter 190, § 1, p. 933.

It is improbable that the legislature intended to withhold from the director all authority as to limited access highways

passing between these points. If it did not intend to withhold that authority in general, then the fact that in this case the designation of the existing highway (primary state highway No. 1) has been transferred to the new one should not be considered as controlling.

The foregoing reasons lead me to believe that the section of relocated primary state highway No. 1 in question should be regarded as a "new highway," and so a "new location" within the meaning of the 1947 act. If this be true, then the only question remaining as to the acquisition of limited access facilities (exception [c] in the court order) is whether the director acted arbitrarily and capriciously in designating such rights for acquisition. The majority does not discuss this point. My examination of the record convinces me that such action was not arbitrary or capricious.

It should be noted that the purport of the majority opinion is not at all limited to the director's authority to acquire limited access rights by condemnation. It extends, in fact, to every phase of the 1947 act and all of the authority the director may exercise thereunder, whether in connection with condemnations, purchases, improvements, construction, regulation, or otherwise. This is true because the director's authority as to all of these activities, under the 1947 act, is limited to access facilities "on new locations." Moreover, the majority opinion not only has this sweeping effect as to the relocation of primary state highway No. 1, but also as to the relocation of any other primary state highway, where it is sought to meet modern traffic demands and safety requirements by limiting access to the relocated highway.

Exceptions (a) and (b) do not involve the acquisition of limited access rights, but, rather, the acquisition of fee title to tracts abutting the proposed highway. Hence, even under the majority view that the 1947 act is not applicable, this should not be deemed determinative of the correctness of the trial court's ruling as to those two exceptions. The director has general authority, under Laws of 1937, chapter 53, § 25, p. 146 (Rem. Rev. Stat., Vol. 7A, § 6400-25), to condemn lands for highway purposes, including lands needed

". . . so as to afford unobstructed vision therefor toward any railroad crossing or another public highway crossing . . . or any site for other necessary structures or for structures·for the health and accommodation of persons traveling or stopping upon the primary state highways of this state, or for any other highway purpose . . ."

It was the contention of respondent in the court below, and here, that (1) the above statute did not authorize the director to condemn the tracts involved in exceptions (a) and (b); and (2) that, in any event, the director acted arbitrarily in designating these tracts for acquisition. The majority does not deal with these contentions, and it would therefore serve no good purpose for me to discuss them at length. Suffice it to say that I do not agree with either of these contentions and would reverse as to exceptions (a) and (b), whatever conclusion is reached with respect to the 1947 act.

March 16, 1951. Petition for rehearing denied.