[No. 33980.   Department One.   August 15, 1957.]

THE STATE OF WASHINGTON, *Appellant*, v. EDWARD CALKINS
*et al.*, *Respondents.*[1]

[1]Reported in 314 P. (2d) 449.

*The Attorney General, Paul Sinnitt* and *Newell Smith, Assistants*, for appellant.

*Michael R. Donovan* and *William M. Clapp*, for respondents.

FINLEY, J.—This is an eminent domain proceeding brought by the state of Washington to condemn and appropriate a right of way across the premises of the defendants, pursuant to RCW 8.04.010 *et seq.*, for the purpose of constructing a *new limited-access* highway under the provisions of RCW 47.52.010 *et seq.* The proposed new limited-access highway (designated as part of secondary state highway No. 11-G) extends a distance of approximately five miles from Ephrata to secondary state highway No. 11-G, which connects Soap Lake and Moses Lake in Grant county.

The land condemned is a part of the defendants' twenty-acre farm, which is rectangular or oblong in shape. The farm is bordered on the westerly side by a county road and on the northerly side by a city street, which marks the city limits of Ephrata. The right of way involved is sixteen hundred feet long and one hundred fifty feet wide. It diagonally bisects the defendants' farm and embraces a total of 4.42 acres. The defendants will be left with a 10.6 acre tract of land on the north side of the highway, and a 4.7-acre tract of land on the south side of the highway. The north tract will continue to be served by the city street. The tract to the south will continue to be served by the county road which will provide access to the new highway. Defendants will have one approach (twenty feet in width) from their property on each side of the highway for the restricted purpose of crossing the highway with farm machinery.

The state introduced in evidence its complete plan for constructing the highway through the defendants' property. Testimony was taken relative to the nature of the highway project, the value of the land taken, and the severance damages to the land remaining in the north and south tracts. The estimates of total damages range, on behalf of the state, from $10,958 to $13,610; and on behalf of defendants, from $25,600 to $40,000. Much of this testimony was based upon the theory that the best and highest use of the farm acreage would be for subdivision purposes. The case was submitted to a jury, which returned a verdict of nineteen thousand dollars. The state has appealed.

The principal question raised is whether there has been a constitutional taking of an alleged easement of access to the highway.

It is well established that the owner of land abutting upon a conventional highway has an easement of ingress and egress. This has been treated as a property right, attached to the land. The courts unanimously hold that such an owner is entitled to just compensation if this easement or property right is taken or damaged. See *Walker v. State*, 48 Wn. (2d) 587, 295 P. (2d) 328, and cases cited;

*State Highway Comm. v. Burk*, 200 Ore. 211, 265 P. (2d) 783.

■ However, where a new limited-access highway is established by condemnation in an area where no highway previously existed, there is no taking of an easement of access, because such an easement has never in fact existed. *State Highway Comm. v. Burk, supra; State v. Clevenger* (Mo.), 291 S. W. (2d) 57; *Carazalla v. State*, 269 Wis. 593, 70 N. W. (2d) 208, 71 N. W. (2d) 276; *Schnider v. State*, 38 Cal. (2d) 439, 241 P. (2d) 1; 43 A. L. R. (2d) 1068; Annotation, 43 A. L. R. (2d) 1068. See, also, articles entitled: *The Limited Access Highway*, 27 Wash. L. Rev. 111; and 13 Mo. L. Rev. 29; *Freeways*, 3 Stanford L. Rev. 298. As to the foregoing proposition, we quote from an illustrative discussion in the Stanford Law Review, *supra*, as follows:

"Suppose the state buys up a completely new right-of-way for a freeway. Take the clearest case first. *A*'s land abuts against *B*'s land. Assume the public buys up a right-of-way for a freeway from *B*, extending along the boundary of his property with *A*, but leaving a one-foot wide strip of land along the boundary line. Obviously, there is no change in *A*'s legal position. Now, suppose the state took *B*'s land right up to the boundary with *A*. Why should *A*'s rights suddenly change? The freeway was never *intended*, from its inception, to provide land service to *A*. Rather it was intended to be a traffic service road. The result must be that, since *A* never had a right of access across his property line before, and since no such right was even impliedly given to him by the state, he does not now have a right of access across his property line to the freeway.

"What of *B*'s rights? Suppose a part of his land along his boundary line with *A* has been taken. *B*, of course, will be paid for the land actually taken. But should he also be paid for a right of access to the freeway? Again, a simple consideration of our rationale brings out the answer. The land service road concept is inapplicable. *B* was given no access to the public road. He therefore has acquired no right of access to be taken." (3 Stanford L. Rev. 298, 307.)

Thus, since the property owner has no easement, *i.e.*, no right of access to the highway itself, it follows that an allowance of damages for the loss of such a nonexistent

easement or right of access is unrealistic, unjustified in fact, and improper.

■ As a necessary corollary, there being no easement, property abutting a limited-access highway has no commercial or frontage value so long as the highway is a limited-access one. *Carazalla v. State, supra.*

■ There is, however, the important subsidiary, or closely related, question of severance damage to the remaining land after a limited-access highway is constructed, because, although severance damages are not dependent upon the existence of rights of access or an easement regarding such rights, the limited-access nature of the highway may cause a more significant or complete severance than the conventional highway. *State Highway Comm. v. Burk, supra; State v. Clevenger, supra.* We quote again from the article in the Stanford Law Review, *supra:*

"As a final case, consider the situation where the right-of-way purchased runs right through *B*'s land. In the case of a normal, unrestricted-access highway, *B* will be paid for the land actually taken and also 'severance' damage for the separation of the property. If the highway is to be of limited-access design, with *B* having no right of access, the severance of the two parcels will be more complete. *B* should be, and is, paid for this more complete severance, but this is on the basis of severance damage alone and not on any theory of right of access being denied." (3 Stanford L. Rev. 298, 308.)

The market value of the property remaining may be affected by the nature and the extent of the taking for the limited-access highway, the separation of a defendant's land into different tracts, and the added inconvenience, if any, in managing the property and in going from one tract to the other. Additional circumstances to be considered in assessing net compensation are: the presence of the new highway; the modes of access provided, if any; the presence of existing streets, roads, and highways; and the reasonably probable uses of the remaining property in determining the question of special benefits, if any, to the defendants. But the severance damages must not be based upon any theory of a

*loss* of access rights to the highway. *State Highway Comm. v. Burk, supra; State v. Clevenger, supra.*

We find no material difference between the statutes of this state and those enacted in the states wherein the courts have upheld the validity and effect of limited-access legislation, as indicated by the authorities cited herein.

The legislature of the state of Washington enacted the limited-access highway code in 1947, which is now designated as RCW 47.52. The pertinent statutes provide, in part, as follows:

"47.52.001 Declaration of policy. Unrestricted access to and from public highways has resulted in congestion and peril for the traveler. It has caused undue slowing of all traffic in many areas. The investment of the public in highway facilities has been impaired and highway facilities costing vast sums of money will have to be relocated and reconstructed. It is the declared policy of this state to limit access to the highway facilities of this state in the interest of highway safety and for the preservation of the investment of the public in such facilities." [Laws of 1951, chapter 167, §1, p. 451.]

"47.52.010 'Limited access facility' defined. For the purposes of this chapter a 'limited access facility' is defined as a highway or street especially designed or designated for through traffic, and over, from, or to which owners or occupants of abutting land, or other persons, have no right or easement, or only a limited right or easement of access, light, air, or view by reason of the fact that their property abuts upon such limited access facility, or for any other reason to accomplish the purpose of a limited access facility. Such highways or streets may be parkways, from which trucks, buses, and other commercial vehicles shall be excluded; or they may be freeways open to use by all customary forms of street and highway traffic." [Laws of 1951, chapter 167, § 2, p. 452.]

It is apparent that the expressed purpose of limiting access, as provided in the above statutes, is to promote safety on the highways of this state; that such legislation is a valid exercise of the police power is beyond question. *State v. Burk, supra; Carazalla v. State, supra.*

An existing highway has been defined as follows:

"RCW 47.52.011 'Existing highway' defined. For the purposes of this chapter, the term 'existing highway' shall include all highways, roads and streets duly established, constructed, and in use. It shall not include *new highways,* roads or streets, or relocated highways, roads or streets, or portions of existing highways, roads or streets which are relocated." [Laws of 1951, chapter 167, § 3, p. 452.]

The legislature has also provided for the acquisition of private or public property and certain property rights, including rights of access, air, view, and light, in the manner authorized by law, for limited-access facilities. RCW 47.52-.050. [*cf.* chapter 202, § 4, Laws of 1947, p. 870.]

Finally, the legislature has declared:

*"No existing public highway, road or street shall be constructed as a limited access facility except upon the waiver, purchase, or condemnation of the abutting owner's right of access thereto as herein provided.* In cases involving *existing highways,* if the abutting property is used for business at the time the notice is given as provided in RCW 47.52.072, *the owner of such property shall be entitled to compensation for the loss of adequate ingress to or egress from such property* as business property in its existing condition at the time of the notice provided in RCW 47.52.072 as for the taking or damaging of property for public use." (Italics ours.) RCW (Sup. 1955) 47.52.080 [*cf.* Laws of 1955, chapter 54, § 2, p. 373.]

Thus, after defining an existing highway (RCW 47.52-.011), the legislature has provided in general terms for the taking of certain property rights, including access, air, view, and light, in the manner *authorized by law,* for the construction of limited-access facilities (RCW 47.52.050). Then, in specific terms the legislature has stated that compensation shall be paid for the taking of an abutting owner's right of access to an *existing highway* (RCW (Sup. 1955) 47.52.080). But no provision is made relative to "taking" the above-mentioned rights in connection with a new limited-access highway. The maxim, *expressio unius est exclusio alterius,* seems to be applicable.

"Freeways are designed to provide rapid transit for through traffic, uninterrupted by vehicles or pedestrians from private roads and intersecting streets, and the word

'freeway,' as used in the Streets and Highways Code, means a highway with respect to which owners of abutting lands have no rights of access or only limited rights of access. (Sts. & Hy. Code, § 23.5.) The Streets and Highways Code furnishes ample authorization for the construction of a freeway on land where no public way existed before without creating rights of direct access in favor of other property which, prior to the new construction, had no such rights of access. (Sts. & Hy. Code, §§ 100.1, 100.2, 100.3.) The provision of section 100.3 [*cf.* RCW 47.52.050] that a declaration creating a freeway 'shall not affect private property rights of access, and any such rights taken or damaged within the meaning of Article I, section 14, of the State Constitution [*cf.* Washington Constitution, Art. I, § 16] . . . *shall be acquired in a manner provided by law*,' plainly refers to rights of access which exist prior to the establishment of the freeway and not to claimed rights which have had no previous existence and which could come into being, if at all, only by virtue of the new construction." *Schnider v. State*, 38 Cal. (2d) 439, 442. (Italics ours.)

Considering the similarity of the California statutes, the foregoing reasoning of the California court is particularly applicable to the problem before us. Clearly, there has been no specific declaration by our legislature of an intention to pay compensation for nonexistent property rights; *i.e.*, access, air, view and light; furthermore, absent such rights, the condemnation proceedings herein do not violate Art. I, § 16, of our state constitution, which requires the payment of just compensation for the taking or damaging of property rights.

The diminution in value of the remaining land, or severance damages, is controlled by RCW 8.04.080, which provides:

" . . . compensation . . . for the taking . . . thereof, together with *the injury, if any*, . . . *to the remainder of the lands*, . . . after offsetting against . . . such compensation and damages the *special benefits* . . . *accruing to such remainder* by reason of . . . the use by the state of the lands . . . " (Italics ours.)

This statute requires compensation for the land actually taken. In addition, it provides for severance damages to

the remainder based upon the added inconvenience of moving from one part of the land to the other, the separation of the land into different tracts, and other management problems. But again, in this context, *loss or lack of access to the highway* cannot be considered as a factor, because the right to use it is nonexistent. Offset against such compensation and severance damages are the special benefits, *if any*,—such as modes of access provided, the presence of existing streets or roads, the presence of the new highway, and the reasonably probable uses of the remaining land. Thus, as indicated, under proper instructions from the trial court, the limited-access character of the highway, maps and plans in relation thereto, should be called to the attention of the jury to enable it to make the above-mentioned determinations.

With the above distinctions and principles of law in mind, we will now discuss appellant's assignments of error.

The first assignment is that the trial court erred in admitting testimony over appellant's objection in regard to an alleged loss of access to the new limited-access highway.

In the record there was much confusion between (a) the *supposed* easement or right of access to the highway and (b) the inconvenience of access from one part of the farm to the other after construction of the new limited-access highway. It would seem that the trial judge misconstrued the *Burk* case, *supra*, and our statutes; and, consequently, that he erred in ruling that the expert witnesses could testify as to loss of access to the highway. Although it was not definitely established that these experts included any amount for loss of access in their estimates or opinions as to damages to the remaining property, it would seem that under the circumstances the line of questioning pursued was questionable, as it tended to emphasize to the jury the nonexistent easement or loss of access to the highway. See *State v. Clevenger, supra.*

The trial court's instruction No. 12 emphasized to the jury the loss by the owner of access rights to the highway, and of the rights of air, view, and light. This constituted reversible error, because the claimed loss of the

property rights of access, air, view, and light, were not proper issues in this case, for the reasons heretofore given.

■ Appellant's proposed instruction No. 1 read as follows:

"No. 1. You are instructed that by law the State has a right to design and construct a 'limited access facility' which includes new highways, roads or streets or relocated highways, roads or streets or portions of existing highways, roads or streets which are relocated and over, from or to which owners or occupants of abutting land have no right or easement of access, light, air or view by reason of the fact that their property will abut upon the proposed 'limited access facility' or highway.

"Therefore, you are instructed that since the remaining portion of respondents' property never had a right of direct access to the proposed highway at any time heretofore you must not include in your verdict any sums whatever by reason of the fact that said remaining property will not have access to the proposed 'limited access facility' or new highway after same is constructed in use."

This proposed instruction No. 1 was a proper statement of the law. It should have been given.

Respondents argue that instruction No. 12 was proper, because (1) it submitted to the jury only the issue of severance damages to the remaining property, and that they were entitled to such an instruction; and because (2) rights of access, air, view, and light are valuable property rights for which the state must pay compensation. Respondents cite *Walker v. State, supra*; and *State ex rel. Veys v. Superior Court*, 33 Wn. (2d) 638, 206 P. (2d) 1028.

■ We find no merit in the first argument, because the issue of severance damages was properly submitted to the jury by other instructions which substantially conform with the views hereinabove expressed as to this aspect of the condemnation action. One of these instructions, No. 6, reads as follows:

"INSTRUCTION No. 6

"I instruct you that in determining what compensation should be paid for damages, if any, for the injury or depreciation, if any, to the remainder of the lands, you may and should take into consideration the uses and purposes for

which the land is adapted or suitable; the character and quality of the tract of which a part is taken; the shape and condition in which such lands are left; the conveniences for using the land before and after such taking, and such other burdens as you should find from the evidence are cast upon the remaining lands and which in your judgment, would affect the market value thereof.

"Injury or depreciation to such remaining lands does not follow as a matter of law by the mere taking of property for public use, but must be found as a fact by the jury from the evidence, and its finding in this respect should be such amount in damages as the jury is able to find from the evidence that the remaining tract is damaged by the appropriation for the right of way."

As to respondents' second contention, relative to instruction No. 12, we have already indicated that there are no easements of access, air, view, and light *to a new limited-access* facility.

*Walker v. State, supra,* relied upon by respondents, is not in point, because we there considered property rights in relation to a conventional or an existing highway.

*State ex rel. Veys v. Superior Court, supra,* cited by respondents, and *State ex rel. Troy v. Superior Court,* 37 Wn. (2d) 660, 225 P. (2d) 890, are not in point. Those two cases decided that, under the legislation then in effect, a limited access facility could be constructed only upon a new location; that property rights to an existing highway could not be affected thereby; and that the proposed construction in those two cases was not on a new location, but affected vested rights in an existing highway. The legislature has amended RCW 47.52 in such a manner as to abrogate the decisions in the two cited cases.

The case of *State v. Ward,* 41 Wn. (2d) 794, 252 P. (2d) 279, was not cited by the appellant or by the respondents. The point there at issue is not involved in the case at bar. While there is some language in the *Ward* decision which may seem to be inconsistent with the views we have expressed herein and inconsistent with the better-reasoned, modern authority, we are convinced that the language to

which we refer is dicta, and not binding upon us in the present instance.

▊ The next assignment is that the trial court improperly admitted expert testimony relative to the commercial value of highway frontage property located in Ephrata. This testimony would have been admissible if the case had involved an existing highway. Because it did not, and since there is no easement or right of access to the new limited-access highway, the subject property did not have commercial frontage, and the admission of testimony as to this was error. *Carazalla v. State, supra.*

▊ Appellant contends that the trial court erred in refusing to admit testimony relative to public auction sales of property similar to the subject property. Appellant made an offer of proof, tending to show that such auction sales were of recent occurrence, and that the property sold was located near the subject property and was comparable thereto. We specifically note that the trial court refused to admit this testimony solely on the ground that it was not indicative of fair market value. This was error.

The general rule supported by the weight of authority is that evidence of the price received at a free and voluntary public auction is competent and admissible as some evidence of value where, presumably, a willing buyer meets a willing seller in open competition. 2 Orgel, Valuation under Eminent Domain (2d ed.) 592, § 140; see, also, *Jackson v. Raisor,* (Ky., 1952) 248 S. W. (2d) 905; *In re Jennings Street,* 201 N. Y. S. 799, 207 App. Div. 170; 5 Nichols on Eminent Domain (3d ed.) 291, § 21.32; 20 Am. Jur. 340, § 373; 31 C. J. S. 886, § 182.

However, the authorities cited, recognize that forced sales are not admissible as evidence of value (*cf. Finch v. Grays Harbor County,* 121 Wash. 486, 209 Pac. 833, 24 A. L. R. 644). Here, so far as the record reveals, we are not concerned with a forced sale. The authorities recognize a distinction between sales involving the latter factor and sales, either auction or otherwise, which do not involve this factor.

Respondents rely upon *Donaldson v. Greenwood,* 40 Wn. (2d) 238, 242 P. (2d) 1038, where this court stated: " 'Fair

market value' means neither a panic price, *auction value*, speculative value, nor a value fixed by depressed or inflated prices." Admittedly, the italicized words are dicta, but in any event the distinction is readily apparent.

Since the trial judge rejected the testimony relative to auction sales on the sole ground that it was not indicative of fair market value, we desire to make it clear that we have passed only upon that limited issue. Whether or not, upon the new trial, appellant can prove (1) that the public auction sales were free and voluntary, (2) that the property sold was not too far removed from the subject property and was comparable thereto, and (3) that the sales were not too remote in time, are issues which we do not pass upon. These are matters as to which it is difficult to formulate specific rules, and they must rest largely in the discretion of the trial court, to be reviewed only for manifest abuse. *In re Northlake Avenue*, 96 Wash. 344, 165 Pac. 113; see, also, Annotation, 118 A. L. R. 904.

For the reasons heretofore indicated, the judgment should be reversed and the cause remanded for a new trial. It is so ordered.

HILL, C. J., and OTT, J., concur.

MALLERY, J., concurs in the result.

WEAVER, J. (concurring in the result)—I concur in the result that a new trial must be granted, but I do not agree that evidence of auction sales is competent.