**UNITED STATES of America,**
**Petitioner-Plaintiff,**

v.

**63.04 ACRES OF LAND, more or less, situate AT LIDO BEACH, near the CITY OF LONG BEACH, Town of Hempstead, County of Nassau, NEW YORK, and Irving A. Nemerov, et al., Defendants.**

C. P. No. 95.

United States District Court
E. D. New York.

July 30, 1957.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Nathan D. Shapiro, Brooklyn, N. Y., for Bessie N. Shapiro and others, Paul Windels, New York City, of counsel.

INCH, Chief Judge.

This condemnation action was originally instituted on July 2, 1954, involving the taking of three parcels of tidal marshland at Lido Beach, Nassau County, New York, for use as part of a guided missile installation, commonly referred to as a "Nike Site". The action was first noticed for inquest in March 1955, for the May Term but did not reach trial until late November, due to many adjournments requested by the defendants and granted, despite government opposition.

The land taken was located north of Lido Boulevard and south of the "bulkhead line" of Reynolds Channel. Between the lands taken and Reynolds Channel there was situated an irregular shaped parcel of land referred to as the "bulge" and not owned, but claimed by these defendants. The land taken was below the grade of Lido Boulevard from three to six feet which, for use as a housing development, would require extensive fill, grading, top soil, bulkhead, piling, private sewer facilities and an extensive drainage system. This land formed a part of a strip of similar lands extending for two to three miles east of Long Beach and west of Point Lookout. Despite the ever-growing scarcity of land available for housing developments in Nassau County, this land had lain idle, undeveloped and unimproved for many years. Obviously the deterrent to development was the cost involved, as compared with other land where such development problems and cost did not exist. During the Summer of 1953, the zoning of that part of the lands south of Lido Boulevard opposite the parcels involved was the subject of a change from residential to a business use, permitting the erection and operation of cabana clubs. At the time of the taking, one or two such clubs had been erected or were under construction and several more have since been erected. The lands taken, with the exception of the road frontage for a depth of 100 feet, were zoned for residential use. None of the land north of the Boulevard, between the City of Long Beach on the west and Point Lookout on the east, had ever been improved or used for housing, except a parcel of 70.80 acres, adjoining the City of Long Beach at the extreme westerly end of Lido Beach, which was acquired by the Government during the War and used for military housing. This parcel the Government sold by contract in October 1954 and the sale was consummated in January 1955.

The trial of the issue of just compensation was held before this court commencing on November 22, 1955, and concluded on November 28, 1955. Some 650 pages of testimony were taken. Following the trial and inspection of the property and neighborhood, a decision fixing compensation and deciding the title to the disputed "bulge" area,—to which the defendants asserted title,—was filed on March 15, 1956, 138 F.Supp. 721, and judgment entered thereon on April 4, 1956. Thereafter an appeal was taken by the defendants on May 5, 1956. The appeal was finally perfected in January 1957 and argued on March 12, 1957. The Court of Appeals, 2 Cir., 245 F.2d 140, affirmed as to the disputed title to the

"bulge" area holding that these defendants did not own this land; but reversed and directed for a retrial on the question of compensation, holding that it was abuse of discretion to exclude evidence of a sale by the Government in "September 1954", of a parcel of land at Lido Beach which, if admitted, might establish that an increase in values south of Lido Boulevard resulted from the cabana club zoning and "spilled over" into the area north of the Boulevard and increased the value of defendants' land. The Court of Appeals in its opinion stated:

"Defendants contend, inter alia, that evidence of a sale subsequent to the taking was improperly excluded from the valuation of the condemned property. We agree with this contention and reverse and remand for a new trial *on that issue* and any related recomputations for severance damages on the property to the east and west of the condemned land."

"*  *  *  evidence of the *September* sale is crucial to the basic issue of whether rezoning of the area south of the Boulevard also raised values on the northern property. We therefore hold that it was an abuse of discretion not to admit and consider the evidence of the sale of government property north of the Boulevard in *September* on the issue of the value of the defendants' property, and reverse and remand for a new trial."

"Nevertheless, a new trial is necessary for the trial court was in error in excluding the evidence of the *September 1954* sale." (Emphasis supplied.)

The court finally concluded its opinion as follows:

"Affirmed as to the issue of title to the bulge; reversed and remanded for proceedings in accordance with the opinion as to the valuation of the condemned land and the severance damages of the property east and west of the condemned area."

I do not interpret the Court of Appeals opinion as necessitating, requiring or affording the defendants or the Government a trial *de novo*, in the commonly accepted interpretation of that term, but conclude that the question of valuation and severance damage should be reconsidered after the Government and the defendants have had an opportunity to offer evidence of the "September sale", which was excluded at the former trial and which the Court of Appeals deemed error. Cf. United States v. 25.4 Acres of land, etc., D.C.E.D.N.Y.1949, 83 F.Supp. 433.

In accordance with this opinion, a rehearing was noticed, at my direction, for July 8, 1957, by Notice of Inquest mailed to defendants' attorneys on June 13, 1957. This hearing was held on July 22, 1957, after several adjournments. The testimony was confined to the facts pertaining to the excluded sale by the Government and its bearing upon the value of defendants' land on July 2, 1954, the date of taking by the Government and the date of valuation and the fixing of compensation.

The excluded sale which the Court of Appeals decided should be considered in fixing compensation for the lands taken, consisted of 70.80 acres. This land was owned by the Government. Bids were solicited by the Government in the Summer of 1954 and many bids were received; twelve bids ranged from $310,000 to $753,000 or approximately $10,630 per acre. The highest bid was approximately $125,000 in excess of the next highest bid. The high bid was accepted by the Government in October 1954, but the sale was not consummated until January 1955. Of the purchase price only 20% was cash and the balance represented by a mortgage. The parcel had frontage of 539 feet on Blackheath Road; 1,753 feet on Greenway Drive and 1319 feet on Lido Boulevard. This parcel was a waterfront parcel fronting on Reynolds Channel. The lands of the defendants before the taking had only limited frontage (approximately 750 feet per parcel) on Lido Boulevard. The land had no frontage on Reynolds Channel, or, if any, the frontage was very slight, due

to the "bulge" land lying between the bulkhead line and the Channel, which was not owned by the defendant. The Government parcel had frontage on Reynolds Channel of 1,258 feet, of which 758 feet were protected by a reinforced concrete bulkhead. The lands of the defendant had no bulkhead located thereon to protect the land from overflow from Reynolds Channel or to protect fill when placed upon this land. When I viewed this property in March, 1955, the entire area was tidal marshland and covered with water in many places at low tide.

The Government sale involved land in an area already developed with many fine homes facing Blackheath Road and Greenway Drive. Both of these roads are interior roads, carrying little traffic, and improved by homes ranging in value from $35,000 to $60,000. The subject property was isolated from any residential development. The Government sale involved land which had water and sewerage facilities on the property. The sewer system was connected to the Long Beach Sewer System and the storm sewer system emptied into Reynolds Channel. The subject property had no water, sewer or storm drainage facilities on the property. The Government sale involved land generally at grade with road frontage. It had been for many years, prior to the Government acquisition, a part of the Lido Golf Club. I have been on this land, as a part of this golf course, many times in years gone by and have been familiar with the entire neighborhood and the history of this development or lack of development for many years. During the War part of this land sold by the Government was used for housing of military personnel. The land was graded, roads constructed and utilities installed. Due to its frontage on Blackheath Road and Greenway Drive, it was a choice parcel for development into homesites at relatively little expense. The number of bids received and the price paid indicate its desirability for such use. The purchasers of this property from the Government immediately prepared and filed a plan of development. United States v. 63.04 Acres, D.C. E.D.N.Y.1956, 142 F.Supp. 239. The Government has supplied many photographs of homes located on Blackheath Road and Greenway Drive, opposite the sale from the Government, and which were there at the time the sale occurred. I have also visited this entire area and have been familiar with it for many years. In my opinion, the Government sale, because of its non-comparable features to defendants' lands, furnishes no reasonable basis for disturbing my previous appraisals, nor any reason for concluding that the lands of the defendants are in any fair degree similar for valuation purposes. A portion of the land involved in this Government sale was later condemned in this action and the value attributed to it by the Government and the court after trial indicates complete dissimilarity. United States v. 63.04 acres, supra.

The zoning change to cabana club use south of Lido Boulevard did not extend west to the area south and opposite of the Government sale and that area remained residential; whereas the land south of defendants' land was changed from residential to cabana use in June 1953. It is my considered opinion that use for cabana clubs, with its attendant traffic, crowds, music and nightclub activities, would not be a desirable or appreciating factor which would increase values for highclass residential use of land separated only by a public road. That land values in the area, as well as those throughout Nassau County, have substantially increased since July 1954, cannot be questioned. There has been a steady increase, with the largest increase noticed in 1955. In 1956, due to economic conditions and credit restrictions, the increase has not been so noticeable although there yet does not appear any great amount of lessening of values. We, however, are dealing with a value as of the date of taking by the Government in July 1954, and that date is controlling as to compensation. Anderson v. United

States, 5 Cir., 1950, 179 F.2d 281, certiorari denied 339 U.S. 965, 70 S.Ct. 1000, 94 L.Ed. 1373; 11,000 Acres, etc. v. United States, 5 Cir., 1945, 152 F.2d 566, certiorari denied 328 U.S. 835, 66 S.Ct. 980. Just compensation should reflect the price which would normally be agreed upon between a willing buyer and seller on that date. United States v. Miller, 1943, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336. It is not presumed that such buyers and sellers have the faculty of "hindsight" for if this were true, no sales probably would ever result. "Sales at or about" the time of taking are undoubtedly the best evidence upon which to rely to establish market value, which process the Court of Appeals for this Circuit, and indeed, the Supreme Court has termed "an informed guess". Westchester County Park Commission v. United States, 2 Cir., 1944, 143 F.2d 688, certiorari denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583. United States v. Miller, 1943, 317 U.S. 369, 375, 63 S.Ct. 276. But, on the other hand, the use of sales which occur subsequently and in the passing years afford little help and may present a distorted picture in establishing market value as of a prior date—for if the market is going up, the condemnee is unjustly enriched and if the market is in a decline, the Government gets an unfair advantage. Since we are dealing with a federal question (just compensation), the State Court rules or criteria are not controlling or persuasive. United States v. Miller, supra. Under the New York State Rule, which prevailed until 1949 (but which this court has never followed), sales before or after the date of valuation were excluded as the basis of an expert's opinion. Village of Lawrence v. Greenwood, 300 N.Y. 231, 90 N.E.2d 53. Westchester Park Commission v. United States, supra. Indeed, in some jurisdictions it has been held that the District Court can, within its discretion, exclude all sales as the basis of an expert's opinion. United States v. Katz, 1 Cir., 1954, 213 F.2d 799, certiorari denied 348 U.S. 857, 75 S.Ct. 82, 99 L.Ed. 675.

In conclusion and after hearing and considering the evidence offered and my knowledge and inspection of the land involved and the neighborhood, I fix and determine the just compensation to be paid these defendants as follows:

*Tract A–101*

| | |
|---|---:|
| 26.66 acres at $3,000. per acre | $79,980. |
| 3.67 acres of 7.20 acres, not taken, adjoining Tract A–101, at $3,000. per acre, depreciated 50% due to severance | 5,505. |
| Value of part taken, including damages to remainder | $85,485. |

*Tract A–102:* (*)

| | |
|---|---:|
| 27.90 acres at $3,000. per acre | $83,700. |

No severance damage

(*) Note: 27.88 acres, as described in complaint and Declaration of Taking.

*Tract A–103:*

| | |
|---|---:|
| 3.70 acres at $3,000. per acre | $11,100. |
| 3.85 acres of 18 acres not taken, adjoining Tract A–103, at $3,000. per acre, depreciated 50% due to severance | 5,775. |
| Value of part taken, including damages to remainder | $16,875. |

Settle order.